IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS NAVARROLI,  on behalf of himself and all  others similarly situated,  <br>  Plaintiff,  <br> vs.  <br> LVNV FUNDING, LLC,  RESURGENT CAPITAL SERVICES, L.P.,  ALEGIS GROUP, L.L.C., and  FIRSTSOURCE ADVANTAGE, L.L.C.,  <br>  Defendants. | Case No. 17-cv-5373  <br> Judge Charles Norgle  <br> Magistrate Judge Susan E. Cox |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**[1]

Plaintiff Nicholas Navarroli has requested that this Court enter an order determining that this Fair Debt Collection Practices Act ("FDCPA") action may proceed as a class action against LVNV Funding, LLC ("LVNV"), Reseurgent Capital Services, L.P. ("Resurgent"), Alegis Group, L.L.C. ("Alegis") and Firstsource Advantage, L.L.C. ("Firstsource"). This memorandum is submitted in support of that motion.

**I.    NATURE OF THE CASE**

Defendants have been attempting to collect from plaintiff a debt consisting of a First Premier Bank credit card obtained and used for personal, family or household purposes and not for business purposes.

The debt went into default prior to 2011. The applicable Illinois statute of limitations is five years, so that the debt was time-barred by 2017.

On or about March 9, 2017, defendant Firstsource Advantage, LLC, acting on behalf of defendant LVNV Funding, LLC, and at the direction of Resurgent Capital Services, L.P., sent

---

[1] Exhibits referenced are attached to Plaintiff's Motion for Class Certification.

1

plaintiff the letter attached as Exhibit A.

Exhibit A states, "The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding LLC will not sue you for it, and LVNV Funding LLC will not report it to any credit reporting agency."

Exhibit A is a form letter.

Exhibit A offered a settlement of the alleged credit card debt, including a settlement in the form of a payment plan.

The letter does not disclose that making a payment as requested may restart the statute of limitations

## II.    THE FAIR DEBT COLLECTION PRACTICES ACT

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). This law "is designed to protect consumers from unscrupulous collectors, regardless of the validity of the debt." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt. It also requires debt collectors to give debtors certain information about alleged debts, and about their rights as consumers. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

In enacting the FDCPA, Congress recognized the

> **universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule....  [The] vast majority of consumers who obtain credit fully intend to repay their debts.  When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.**

95 S.Rep. 382, at 3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697.

*Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D. Ill. 2008) held that

**the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct. This intent cannot be underestimated.**

See *Sonmore v. CheckRite Recovery Services, Inc.*, 187 F.Supp.2d 1128, 1132 (D. Minn. 2001) (the FDCPA "is a remedial strict liability statute which was intended to be applied in a liberal manner"); *Owens v. Hellmuth & Johnson PLLC*, 550 F.Supp.2d 1060, 1063 (D. Minn. 2008) (same); and *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (the FDCPA should be "[construed]... broadly, so as to effect its purpose"). Further, "Congress intended the Act to be enforced primarily by consumers...." *Federal Trade Commission v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

The Seventh Circuit has long held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003), held that the "test for determining whether a debt collector violated [the FDCPA] is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer. *Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994)."

Plaintiffs need not prove intent, bad faith or negligence; "debt collectors whose conduct falls short of [the FDCPA's] requirements are liable irrespective of their intentions." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 805-806 (7th Cir. 2009). And pursuant to 15 U.S.C. §1692k, statutory damages are recoverable for violations regardless of whether the consumer proves actual damages – "[all] that is required is proof that the statute was violated, although even then it is within the district court's discretion to decide whether and if so how much to award, up to the $1,000 ceiling." *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997). *Accord*, *Quiroz v. Revenue Production Management, Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008); *Blarek v.*

*Encore Receivable Management*, 244 F.R.D. 525, 528 (E.D. Wis. 2007).

### III. STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. As the court stated in *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

> **In a large and impersonal society, class actions are often the last barricade of consumer protection. . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.** (574 N.E.2d at 764, 766)

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. As a result, numerous FDCPA class actions have been certified. *Shea v. Codilis*, 99 C 57, 2000 WL 336537, (N.D. Ill. Mar. 27, 2000); *Roe v. Publishers Clearing House*, 98 C 330, 1999 WL 966977, (N.D. Ill. Sept. 30, 1999); *Vines v. Sands*, 188 F.R.D. 302 (N.D. Ill. 1999); *Nielsen v. Dickerson*, 98 C 5909, 1999 WL 350694, (N.D. Ill. May 19, 1999); *Sledge v. Sands*, 182 F.R.D. 255 (N.D. Ill. 1998); *Shaver v. Trauner*, 97 cv 1309, 1998 WL 35333713, (C.D. Ill. July 31, 1998); *Davis v. Suran*, 98 C 656, 1998 WL 474105, (N.D. Ill. July 31, 1998); *Francisco v. Doctors & Merchants Credit Service, Inc.*, 98 C 716, 1998 WL 474107, (N.D. Ill. July 29, 1998); *Keele v. Wexler & Wexler*, 95 C 3483, 1996 WL 124452, (N.D. Ill. March 18, 1996), *aff'd*, 149 F.3d 589 (7th Cir. 1998); *Wells v. McDonough*, 97 C 3288, 1998 WL 160876, (N.D. Ill. Mar. 23, 1998); *Miller v. Wexler & Wexler*, 97 C 6593, 1998 WL 60798, (N.D. Ill. Feb. 5, 1998); *Wilborn v. Dun & Bradstreet*, 180 F.R.D. 347 (N.D. Ill. 1998); *Arango v. GC Services LP*, 97 C 7912, 1998 WL 325257, (N.D. Ill. 1998) (misleading collection letters); *Avila v Van Ru Credit Corp.*, 94 C 3234, 1995 WL 683775, (N.D. Ill. 1995), *aff'd*, *Avila v. Rubin, supra*, 84 F.3d 222; *Carr v. Trans Union Corp.*, 94 cv 22, 1995 WL 20865 (E.D. Pa. Jan. 12, 1995) (FDCPA

class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); *Colbert v. Trans Union Corp.*, 93 cv 6106, 1995 WL 20821 (E.D. Pa. Jan. 12, 1995) (same); *Gammon v. GC Services, L.P.*, 162 F.R.D. 313 (N.D. Ill. 1995) (similar); *Zanni v. Lippold*, 119 F.R.D. 32, 35 (C.D. Ill. 1988); *West v. Costen*, 558 F. Supp. 564, 572-573 (W.D. Va. 1983) (FDCPA class certified regarding alleged failure to provide required "validation" notices and addition of unauthorized fees)*; Cheqnet Systems, Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995) (class certified in FDCPA action challenging bad check charges); *Brewer v. Friedman*, 152 F.R.D. 142 (N.D. Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers), earlier opinion, 833 F. Supp. 697 (N.D. Ill. 1993); *Duran v. Credit Bureau of Yuma, Inc.*, 93 F.R.D. 607 (D. Ariz. 1982) (class certified in action complaining of unauthorized charges).

## IV. THE PROPOSED CLASSES MEET THE REQUIREMENTS FOR CERTIFICATION

### A. Rule 23(a)(1) -- Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the be "so numerous that joinder of all members is impracticable." "When the class is large, numbers alone are dispositive . . . ." *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D. Ill. 1986). Where the class numbers at least 40, joinder is generally considered impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Riordan*, 113 F.R.D. 60 (10-29 sufficient); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (E.D. Pa. 1968) (25 sufficient); *Sala v. National R. Pass. Corp.*, 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70). It is not necessary that the precise number of class members be known. "A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986).

The court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination . . . Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1992), §7.22.A.

Here, on information and belief, based on the use of form letters and the fact that debts are normally purchased, sold and placed in portfolios of debts of like nature and vintage, each class is so numerous that joinder of all members is not practicable.

The exact number of class members will be determined through further discovery. In *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011), the Court of Appeals required that a class representative file a class certification motion with the complaint, and held that such matters as the exact number of class members be developed through discovery thereafter.

**B.    Rules 23(a)(2) and 23(b)(3) – Predominance of common questions of law or fact**

*Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 334 (N.D. Ill. 1974), held that satisfaction of the predominance requirement of Fed.R.Civ.P. 23(b)(3) "normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy?" *Accord*, *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 310 (N.D. Ill. 1995). See *Walker v. Calusa Investments, LLC*, 244 F.R.D. 502, 506-507 (S.D. Ind. 2007) (similar).

In this case, the "common nucleus of operative fact," *Halverson*, 69 F.R.D. at 335, is whether defendants engage in a practice of attempting to collect time-barred debts without proper disclosure and whether such practice violates the FDCPA.

The only individual issues are the identification of the class members and actual

6

damages, a matter capable of ministerial determination from defendant's records.

Questions readily answerable from defendants' files do not present an obstacle to class certification. *Heastie v. Community Bank*, 125 F.R.D. 669 (N.D. Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank").

In any event, the Seventh Circuit has held that the need for "separate proceedings of some character . . . to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendants violated [the law]." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). "Once that question is answered, if it is answered in favor of the class, a global settlement . . . will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." *Id.*

C.     **Rule 23(a)(3) -- Typicality**

The rule requires that the claims of the named plaintiff be typical of the claims of the class:

> **A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.**

*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition. By definition, each of the

7

class members has been subject to the same treatment as the plaintiff. Plaintiff's claims and the claims of the class members all turn on whether defendants engage in a practice of attempting to collect time-barred debts without proper disclosures.

### D. Rule 23(a)(4) -- Adequacy of representation

The rule also requires that the named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *accord*, *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975); *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321.

Plaintiff understands the obligations of a class representative, and has retained experienced counsel, as is indicated by Exhibit B to the Motion for Class Certification, which sets forth counsel's qualifications and resources.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class. Here, both plaintiff and the class members seek monetary damages as the result of defendants unlawful collection practices. Given the identity of claims between plaintiff and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiff and those of the class.

### E. Rule 23(b)(3) -- Class action is superior to other available methods of resolving this controversy

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes*, 143 F.R.D. at 189; *Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149 (W.D. Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the ". . . inability of the poor or uninformed to

enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case there is no better method available for the adjudication of the claims which might be brought by each individual debtor. The vast majority of debtors are undoubtedly unaware that their rights are being violated. In addition, many persons from whom defendant is attempting to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to retain counsel to protect their rights on an individual basis.

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .**

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see e.g.,** *Phillips Petroleum Co. v. Shutts***, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

*Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628-29 (E.D. Pa 1994).

Class certification will provide an efficient and appropriate resolution of the controversy.

*Zanni v. Lippold*, *supra,* 119 F.R.D. 32 (C.D. Ill. 1998).

9

V.      **CONCLUSION**

The proposed classes meet the requirements of Rules 23(a) and (b)(3). Plaintiff respectfully requests that this Court certify this action as a class action.

Respectfully submitted,

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
Patricia N. Jjemba
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## **CERTIFICATE OF SERVICE**

       I, Daniel A. Edelman, hereby certify that on July 21, 2017, I caused to be filed the foregoing document with the Clerk of the Court using the CM/ECF System, and shall cause to be served, as soon as service may be effectuated, a true and accurate copy of such filing in the following manners:

LVNV Funding, LLC
c/o Registered Agent
Illinois Corporation Services Co.
801 Adlai Stevenson Drive
Springfield, Illinois 62703

Resurgent Capital Services, L.P.
c/o Registered Agent
Illinois Corporation Services Co.
801 Adlai Stevenson Drive
Springfield, Illinois 62703

Alegis Group, LLC
c/o Registered Agent
Illinois Corporation Services Co.
801 Adlai Stevenson Drive
Springfield, Illinois 62703

Firstsource Advantage, LLC
c/o Registered Agent
CT Corporation System
208 S. LaSalle St., Suite 814
Chicago, IL 60604

                                                                                       s/ Daniel A. Edelman
                                                                                       Daniel A. Edelman