**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

NICHOLAS NAVARROLI, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES, LP, ALEGIS GROUP, LLC., and FIRSTSOURCE ADVANTAGE, LLC,

Defendants,

Case No.: 1:17-cv-05373
Judge Robert M. Dow, Jr.

---

SHABIH SIDDIQI, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

DYNAMIC RECOVERY SOLUTIONS, LLC, et al.

Defendants,

Case No. 1:17-cv-06126
Judge Robert M. Dow, Jr.

**DECLARATION OF DANIEL A. EDELMAN**

Daniel A. Edelman declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the following statements are true:

Daniel A. Edelman declares under penalty of perjury, as provided for by 735 ILCS 5/1-109, that the following statements are true:

1. Edelman, Combs, Latturner & Goodwin, LLC, has 8 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, Julie Clark, Heather Kolbus, Cassandra P. Miller, and Tiffany N. Hardy, and four associates.

2. **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, through both class and individual actions. He is the author of the chapters on the "Fair Debt Collection Practices Act," "Truth in Lending Act," and "Telephone Consumer Protection Act" in *Illinois Causes of Action* (Ill. Inst. For Cont. Legal Educ. 2014 and earlier editions), author of the chapter on the Telephone Consumer Protection Act in *Federal Deception Law* (National Consumer Law Center 2013 Supp.), author of *Collection Defense*

(Ill. Inst. Cont. Legal Educ. 2008, 2011), and *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2014); author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2013), co-author of Rosmarin & Edelman, *Consumer Class Action Manual* (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of *Representing Consumers in Litigation with Debt Buyers* (Chicago Bar Ass'n 2008); *Predatory Mortgage Lending* (Ill. Inst. for Cont. Legal. Educ. 2008, 2011), author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2014), *Illinois Consumer Law*, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002); *Payday Loans: Big Interest Rates and Little Regulation*, 11 Loy.Consumer L.Rptr. 174 (1999); author of *Consumer Fraud and Insurance Claims*, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," *Ohio Consumer Law* (1995 ed.); co-author of *Fair Debt Collection: The Need for Private Enforcement*, 7 Loy.Consumer L.Rptr. 89 (1995); author of *An Overview of The Fair Debt Collection Practices Act*, in Financial Services Litigation, Practicing Law Institute (1999); co-author of *Residential Mortgage Litigation*, in Financial Services Litigation, Practicing Law Institute (1996); author of *Automobile Leasing: Problems and Solutions*, 7 Loy.Consumer L.Rptr. 14 (1994); author of *Current Trends in Residential Mortgage Litigation*, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); co-author of *Illinois Consumer Law* (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, *Attorney Liability Under the Fair Debt Collection Practices Act* (Chicago Bar Ass'n 1996); and author of *The Fair Debt Collection Practices Act: Recent Developments*, 8 Loy.Consumer L. Rptr. 303 (1996), among others. Mr. Edelman is also a frequent speaker on consumer law topics for various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conference, and the Illinois Institute for Continuing Legal Education, and he has testified on behalf of consumers before the Federal Trade Commission and the Illinois legislature. He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Sixth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Courts for the Eastern and Western Districts of Wisconsin, United States District Court for the Western District of Texas, United States District Court for the District of Colorado and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar.

3. **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School. From 1984-1991, she supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991 and became a named partner in 1993. Ms. Combs received an Award for Excellence in Pro Bono Service from the Judges of the United States District Court for the Northern District of Illinois and the Chicago Chapter of the Federal Bar Association on May 18, 2012. Ms. Combs has argued over fifteen cases in the 1st, 3rd and 7th Circuit Court of Appeals and the Illinois Appellate Court, and she is a frequent speaker on consumer law topics at various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conferences, and the Practicing Law Institute's Consumer Financial Services Institute. Ms. Combs is coauthor of *The Bankruptcy Practitioner's Guide to Consumer Financial Services Actions After the Subprime Mortgage Crisis* (LRP Publications 2010). Her reported decisions include: *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002); *Chandler v. American General Finance, Inc.*, 329 Ill. App.3d 729, 768

N.E.2d 60 (1st Dist. 2002); *Miller v. McCalla Raymer*, 214 F.3d 872 (7th Cir. 2000); *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000); *Emery v. American Gen. Fin., Inc.*, 71 F.3d 1343 (7th Cir. 1995); *McDonald v. Asset Acceptance, LLC,* 296 F.R.D. 513 (E.D.Mich. 2013); and *Tocco v. Real Time Resolutions*, 48 F.Supp.3d 535 (S.D.N.Y. 2014). She is a member of the Illinois bar and admitted to practice in the following courts: United States District Courts for the Northern, Central and Southern Districts of Illinois, United States District Courts for the Northern and Southern Districts of Indiana, Seventh Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, and Tenth Circuit Court of Appeals. She is a member of the Northern District of Illinois trial bar.

4. **James O. Latturner** is a 1962 graduate of the University of Chicago Law School. Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma. From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions. His publications include Chapter 8 ("Defendants") in *Federal Practice Manual for Legal Services Attorneys* (M. Masinter, Ed., National Legal Aid and Defender Association 1989); *Governmental Tort Immunity in Illinois*, 55 Ill.B.J. 29 (1966); *Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations*, 2 Loy.Consumer L.Rep. 64 (1990), and *Illinois Consumer Law* (Chicago Bar Ass'n 1996). He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience. He has argued over 30 appeals, including two cases in the United States Supreme Court, three in the Illinois Supreme Court, and numerous cases in the Seventh, Third, Fifth, and Eleventh Circuits. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar.

5. **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988) and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). Ms. Goodwin was Chair of the Chicago Bar Association's Consumer Law Committee from 2007 - 2010, and she has previously been on the faculty of the Practicing Law Institute's Consumer Financial Services Institute in Chicago, speaking on issues relating to the Fair Debt Collection Practices Act and mortgage litigation. Ms. Goodwin spoke at the 2016 Conference on Consumer Finance Law on mortgage servicing issues. Ms. Goodwin has also been a frequent speaker at the Chicago Bar Association, speaking on topics such as how to assist consumers with credit reporting problems, developments in class action law and arbitration agreements in consumer contracts. **Reported Cases.** *Aleksic v. Experian Information Solutions, Inc.*, 2014 WL 2769122 (N.D.Ill. June 18, 2014); *Taylor v. Screening Reports, Inc*., 2015 WL 4052824 (N.D.Ill. July 2, 2015); *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748 (7th Cir. 2000); *Hillenbrand v. Meyer Medical Group*, 288 Ill.App.3d 871, 682 N.E.2d 101 (1st Dist. 1997), later opinion, 308 Ill.App.3d 381, 720 N.E.2d 287 (1st Dist. 1999); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000); *Large v. Conseco Fin. Servicing Co.*, 292 F.3d 49 (1st Cir. 2002); *Flippin v. Aurora Bank, FSB*, 12 C 1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Henry v. Teletrack, Inc.,* 11 C 4424, 2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill. March 7, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11 C 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Bunton v. Cape Cod Village, LLC*, No. 09-1044, 2009 WL 2139441, 2009 U.S. Dist. LEXIS 57801 (C.D.Ill. July 6, 2009); *Wilson v. Harris N.A.*, No. 06 C 5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007); *Carbajal v. Capital One*, 219 F.R.D. 437 (N.D.Ill. 2004); *Russo v. B&B Catering*, 209 F.Supp.2d 857 (N.D.Ill. 2002); *Romaker v. Crossland Mtg. Co.*, No. 94 C 3328, 1996 WL 254299, 1996 U.S.Dist. LEXIS 6490 (N.D.Ill. May 10, 1996); *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill 1996). Ms. Goodwin is a member of the Illinois bar and is admitted in the Seventh, First, and D.C. Circuit Courts of

Appeals, and the United States District Courts for the Northern and Central Districts of Illinois, and the Northern District of Indiana. She is also a member of the Northern District of Illinois trial bar.

6. **Julie Clark** (neé Cobalovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) **;** *Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Qualkenbush v. Harris Trust & Savings Bank*, 219 F. Supp.2d 935 (N.D.Ill. 2002); *Covington-McIntosh v. Mount Glenwood Memory Gardens*, 00 C 186, 2002 WL 31369747 (N.D.Ill., Oct. 21, 2002), later opinion, 2003 WL 22359626 (N.D.Ill. Oct. 15, 2003); *Western Ry. Devices Corp. v. Lusida Rubber Prods.*, 06 C 52, 2006 WL 1697119, 2006 U.S. Dist. LEXIS 43867 (N.D.Ill. June 13, 2006); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06 C 4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill. June 4, 2007); *Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc.*, 07 C 5715, 2007 WL 3448731, 2007 U.S. Dist. LEXIS 84425 (N.D.Ill. Nov. 14, 2007); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 17, 2008); *Sadowski v. OCO Biomedical, Inc.*, 08 C 3225, 2008 WL 5082992, 2008 U.S. Dist. LEXIS 96124 (N.D.Ill. Nov. 25, 2008); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 09 C 3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy v. Promius Pharma, LLC*, 09 C 2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Lab., Inc.*, 10 C 1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Garrett v. Sharps Compliance, Inc.*, 10 C 4030, 2010 WL 4167157, 2010 U.S. Dist. LEXIS 109912 (N.D.Ill. Oct. 14, 2010).

7. **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** *Clark v. Experian Info. Solutions, Inc.*, 8:00cv1217-22, 2004 WL 256433, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004); *DeFrancesco v. First Horizon Home Loan Corp.*, 06-0058, 2006 WL 3196838, 2006 U.S. Dist. LEXIS 80718 (S.D.Ill. Nov. 2, 2006); *Jeppesen v. New Century Mortgage Corp.*, 2:05cv372, 2006 WL 3354691, 2006 U.S. Dist. LEXIS 84035 (N.D.Ind. Nov. 17, 2006); *Benedia v. Super Fair Cellular, Inc.*, 07 C 1390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill. Sept. 26, 2007); *Gonzalez v. Codilis & Assocs., P.C.*, 03 C 2883, 2004 WL 719264, 2004 U.S. Dist. LEXIS 5463 (N.D.Ill. March 30, 2004); *Centerline Equipment Corp. v. Banner Personnel Svc., Inc.*, 07 C 1611, 2009 WL 1607587, 2009 U.S. Dist. LEXIS 48092 (N.D.Ill. June 9, 2009); *R. Rudnick & Co. v. G.F. Protection, Inc.*, 08 C 1856, 2009 WL 112380, 2009 U.S. Dist. LEXIS 3152 (N.D.Ill. Jan. 15, 2009); *Pollack v. Cunningham Financial Group, LLC*, 08 C 1405, 2008 WL 4874195, 2008 U.S. Dist. LEXIS 4166 (N.D.Ill. June 2, 2008); *Pollack v. Fitness Innovative Techs., LLC*, No. 08 CH 03430, 2009 WL 506280, 2009 TCPA Rep. 1858 (Ill. Cir. Ct., Jan. 14, 2009); *R. Rudnick & Co. v. Brilliant Event Planning, Inc.*, No. 09 CH 18924, 2010 WL 5774848, 2010 TCPA Rep. 2099 (Ill. Cir. Ct., Nov. 30, 2010).

8. **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (J.D. *magna cum laude* 2006). **Reported Cases:** *Pietras v. Sentry Ins. Co.*, 513 F.Supp.2d 983 (N.D.Ill. 2007); *Hernandez v. Midland Credit Mgmt.*, 04 C 7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill. Sept. 25, 2007); *Balogun v. Midland Credit Mgmt.*, 1:05cv1790, 2007 WL 2934886, 2007 U.S. Dist. LEXIS 74845 (S.D.Ind. Oct. 5, 2007); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870 (N.D.Ill. 2008); *Miller v. Midland Credit Management, Inc.*, No. 08 C 780, 2009 WL 528796, 2009 U.S. Dist. LEXIS 16273 (N.D.Ill. March 2, 2009); *Frydman v. Portfolio Recovery Associates, LLC*, 11 C 524, 2011 WL 2560221, 2011 U.S. Dist. LEXIS 69502 (N.D.Ill. June 28, 2011).

9. **Tiffany N. Hardy** is a graduate of Tuskegee University (B.A. 1998) and

Syracuse University College of Law (J.D. 2001). **Reported cases:** *Unifund v. Shah*, 407 Ill.App.3d 737, 946 N.E.2d 885 (1st Dist. 2011), later opinion, 2013 IL App (1st) 113658, 993 N.E.2d 518; *Tocco v. Real Time Resolutions*, 48 F.Supp.3d 535 (S.D.N.Y. 2014); *Balbarin v. North Star*, 10 C 1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 5, 2011)(class certified); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion, 297 F.R.D. 42 (E.D.N.Y. 2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Manlapaz v. Unifund*, 08 C 6524, 2009 WL 3015166, 2009 U.S. Dist. LEXIS 85527 (N.D.Ill. Sept. 15, 2009); *Matmanivong v. Unifund*, 08 C 6415, 2009 WL 1181529, 2009 U.S. Dist. LEXIS 36287 (N.D.Ill. Apr. 28, 2009); *Kubiski v. Unifund*, 08 C 6421, 2009 WL 774450, 2009 U.S. Dist. LEXIS 26754 (N.D.Ill. Mar. 25, 2009); *Cox v. Unifund CCR Partners*, 08 C 1005 (N.D.Ill. Dec. 4, 2008) (Report and Recommendation for Class Certification); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Cotton v. Asset Acceptance*, 07 C 5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill. June 26, 2008) (class certified); *Ketchem v. American Acceptance Co.*, 641 F. Supp. 2d 782 (N.D.Ind. 2008); *D'Elia v. First Capital*, 07 C 6042, 2008 WL 4344571, 2008 U.S. Dist. LEXIS 22461 (N.D.Ill. Mar. 19, 2008). She is admitted in New York and the District of Columbia as well as Illinois.

10. **Associates**:

a. **David Kim** is a graduate of the University of Illinois (B.A., 2001, M.A., 2004) and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., 2010).

b. **Isabella Janusz** is a graduate of Georgetown University (B.S.F.S. 2011) and the University of Chicago Law School (J.D. 2014).

c. **Paul M. Waldera** is a graduate of the University of Illinois (B.S., 2014) and University of Michigan Law School (J.D., 2017).

d. **Mary Frances Charlton** is a graduate of Spring Hill College (B.S., 2009) and American University - Washington College of Law (J.D., 2013). She is a member of the Virginia bar.

11. The firm also has a dozen legal assistants and support staff.

12. Since its inception, the firm has recovered more than $500 million for consumers. The types of cases handled by the firm are illustrated by the following:

13. **Collection practices:** The firm has brought numerous cases under the Fair Debt Collection Practices Act, both class and individual. Decisions include: *Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994), aff'd 514 U.S. 291 (1995) (FDCPA coverage of attorneys); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014)(en banc); *Janetos v. Fulton, Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Soppet v. Enhanced Recovery Co.,* 679 F.3d 637 (7th Cir. 2012); *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009); *Hale v. Afni, Inc.*, 08 C 3918, 2010 WL 380906, 2010 U.S. Dist. LEXIS 6715 (N.D.Ill. Jan. 26, 2010); *Parkis v. Arrow Fin Servs.*, 07 C 410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Foster v. Velocity Investments*, 07 C 824, 2007 WL 2461665, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill. Aug. 24, 2007); *Foreman v. PRA III, LLC*, 05 C 3372, 2007 WL 704478, 2007 U.S. Dist. LEXIS 15640 (N.D. Ill. March 5, 2007); *Schutz v. Arrow Fin. Services*, 465 F. Supp. 2d 872 (N.D.Ill. 2006); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014), later opinion, 807 F.3d 872 (7th Cir. 2015) (collection of time-barred debts); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); (activities

of mortgage company field agents); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003) (FDCPA coverage of debt buyers); *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) (attorney letters without attorney involvement); *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Johnson v. Revenue Management, Inc.*, 169 F.3d 1057 (7th Cir.1999); *Keele v. Wexler & Wexler*, 95 C 3483, 1995 WL 549048, 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. Sept. 12, 1995) (motion to dismiss), later opinion, 1996 WL 124452, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), aff'd, 149 F.3d 589 (7th Cir. 1998); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2nd Cir. 1998); *Young v. Citicorp Retail Services, Inc.*, No. 97-9397, 1998 U.S.App. LEXIS 20268, 159 F.3d 1349 (2nd Cir., June 29, 1998) (unpublished); *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739 (9th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), aff'g *Avila v. Van Ru Credit Corp.*, 94 C 3234, 1994 WL 649101 (N.D.Ill., Nov. 14, 1994), later opinion, 1995 WL 22866 (N.D.Ill., Jan. 18, 1995), later opinion, 1995 WL 41425 (N.D.Ill., Jan. 31, 1995), later opinion, 1995 WL 55255 (N.D.Ill., Feb. 8, 1995), later opinion, 1995 WL 683775, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 16, 1995); *Tolentino v. Friedman*, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion, 297 F.R.D. 42 (E.D.N.Y. 2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Stubbs v. Cavalry SPV I*, 12 C 7235, 2013 WL 1858587 (N.D.Ill., May 1, 2013); *Osborn v. J.R.S.-I., Inc.*, 13 C 621, 2013 WL 2467654 (N.D.Ill., June 7, 2013); *Terech v. First Resolution Mgmt. Corp.*, 854 F.Supp.2d 537, 544 (N.D.Ill. 2012); *Casso v. LVNV Funding, LLC*, 12 C 7328, 2013 WL 3270654 (N.D.Ill., June 26, 2013); *Simkus v. Cavalry Portfolio Services, LLC*, 11 C 7425, 2012 WL 1866542 (N.D.Ill., May 22, 2012); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); *Ramirez v. Apex Financial Management, LLC*, 567 F. Supp.2d 1035 (N.D. Ill. 2008); *Cotton v. Asset Acceptance, LLC*, 07 C 5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill., June 26, 2008); *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800 (N.D.Ill. 2008); *Martin v. Cavalry Portfolio Servs., LLC,* 07 C 4745, 2008 WL 4372717, 2008 U.S. Dist. LEXIS 25904 (N.D.Ill., March 28, 2008); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Hernandez v. Midland Credit Mgmt.*, 04 C 7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill., Sept. 25, 2007) (balance transfer program); *Blakemore v. Pekay*, 895 F.Supp.972 (N.D.Ill. 1995); *Oglesby v. Rotche*, 93 C 4183, 1993 WL 460841, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 5, 1993), *later opinion*, 1994 U.S.Dist. LEXIS 4866, 1994 WL 142867 (N.D.Ill., April 18, 1994); *Laws v. Cheslock*, 98 C 6403, 1999 WL 160236, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999); *Davis v. Commercial Check Control, Inc.*, 98 C 631, 1999 WL 89556, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); *Hoffman v. Partners in Collections, Inc.*, 93 C 4132, 1993 WL 358158, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); *Vaughn v. CSC Credit Services, Inc.*, 93 C 4151, 1994 WL 449247, 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 WL 51402, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); *Beasley v. Blatt*, 93 C 4978, 1994 WL 362185, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 11, 1994); *Taylor v. Fink*, 93 C 4941, 1994 WL 669605, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); *Gordon v. Fink*, 93 C 4152, 1995 WL 55242, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); *Brujis v. Shaw*, 876 F.Supp. 198 (N.D.Ill. 1995).

14. *Jenkins v. Heintz* is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. Mr. Edelman argued it before the Supreme Court and Seventh Circuit. *Avila v. Rubin* and *Nielsen v. Dickerson* are leading decisions on phony "attorney letters." *Suesz v. Med-1 Solutions, LLC* is a leading decision on the FDCPA venue requirements. *McMahon v. LVNV Funding, LLC* is a leading decision on the collection of time-barred debts.

15. **Debtors' rights**. Important decisions include: *Ramirez v. Palisades Collection*

*LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07 C 3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied) (Illinois statute of limitations for credit card debts); *Parkis v. Arrow Fin Servs.*, 07 C 410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Rawson v. Credigy Receivables, Inc.,* 05 C 6032, 2006 WL 418665, 2006 U.S. Dist. LEXIS 6450 (N.D.Ill., Feb. 16, 2006) (same); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (collection of time-barred debts without disclosure); *Jones v. Kunin*, 99-818-GPM, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000) (scope of Illinois bad check statute); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002) (failure to allow cosigner to take over obligation prior to collection action); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc) (venue abuse).

16. **Telephone Consumer Protection Act.** The firm has brought a number of cases under the Telephone Consumer Protection Act, 47 U.S.C. §227, which prohibits "junk faxes," spam text messages, robocalls to cell phones, and regulates telemarketing practices. Important junk fax and spam text message decisions include: *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Benedia v. Super Fair Cellular, Inc.*, 07 C 01390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill., Sept. 26, 2007); *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768 (N.D.Ill. 2008); *ABC Business Forms, Inc. v. Pridamor, Inc.*, 09 C 3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy, Inc. v. Promius Pharma, LLC*, 09 C 2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Laboratory, Inc.*, 10 C 1315, 2010 WL 3034709, 2010 U.S. Dist. LEXIS, 108339 (N.D.Ill., Aug. 3, 3010).

17. The firm has also brought a number of cases complaining of robocalling and telemarketing abuse, in violation of the Telephone Consumer Protection Act. Decisions in these cases include: *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 10 C 1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 21, 2011), *motion to reconsider denied,* 2011 U.S. Dist. LEXIS 58761 (N.D.Ill. 2011); *Sojka v. DirectBuy, Inc.*, 12 C 9809 et al., 2014 WL 1089072 (N.D.Ill., Mar. 18, 2014), later opinion, 2014 WL 1304234 (N.D.Ill., March 31, 2014). The firm has a leadership role in Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act Litigation, MDL No. 2295, and Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation, MDL No. 2286.

18. **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, which include: *Henry v. Teletrack, Inc.,* 11 C 4424, 2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill. March 7, 2012).

19. Another line of cases under the Fair Credit Reporting Act which we have brought, primarily as class actions, alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006).

20. **Class action procedure:** Important decisions include *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Crawford v. Equifax Payment Services, Inc.,* 201 F.3d 877 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (mootness); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48

N.E.3d 1060 (Ill.Sup.Ct.) (mootness), and *Gordon v. Boden,* 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

21. **Landlord-tenant:** The firm has brought more than 20 class actions against landlords to enforce tenants' rights. Claims include failing to pay interest on security deposits or commingling security deposits. Reported decisions include *Wang v. Williams*, 343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); *Dickson v. West Koke Mill Vill. P'Ship*, 329 Ill. App. 3d 341; 769 N.E.2d 971 (4th Dist. 2002); and *Onni v. Apartment Inv. & Mgmt. Co.*, 344 Ill. App. 3d 1099; 801 N.E.2d 586 (2nd Dist. 2003).

22. **Mortgage charges and servicing practices:** The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices. These include MDL-899, *In re Mortgage Escrow Deposit Litigation*, and MDL-1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, as well as the Fairbanks mortgage servicing litigation. Decisions in the firm's mortgage cases include: *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Johnson v. Thomas*, 342 Ill.App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006); *Christakos v. Intercounty Title Co.*, 196 F.R.D. 496 (N.D.Ill. 2000); *Flippin v. Aurora Bank, FSB*, 12 C 1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11 C 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Johnstone v. Bank of America, N.A.*, 173 F.Supp.2d 809 (N.D.Ill. 2001); *Leon v. Washington Mut. Bank, F.A.*, 164 F.Supp.2d 1034 (N.D.Ill. 2001); *Williamson v. Advanta Mortg. Corp.*, 99 C 4784, 1999 WL 1144940, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); *McDonald v. Washington Mut. Bank, F.A.*, 99 C 6884, 2000 WL 875416, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); *GMAC Mtge. Corp. v. Stapleton*, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); *Leff v. Olympic Fed. S. & L. Ass'n,* 86 C 3026, 1986 WL 10636 (N.D.Ill. Sept. 19, 1986); *Aitken v. Fleet Mtge. Corp*., 90 C 3708, 1991 WL 152533,, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. July 30, 1991), later opinion, 1992 WL 33926, 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); *Poindexter v. National Mtge. Corp.*, 94 C 45814, 1995 WL 242287, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); *Sanders v. Lincoln Service Corp.*, 91 C 4542, 1993 WL 1125433, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. April 5, 1993); *Robinson v. Empire of America Realty Credit Corp.*, 90 C 5063, 1991 WL 26593, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); *In re Mortgage Escrow Deposit Litigation*, M.D.L. 899, 1994 WL 496707, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 9, 1994); *Greenberg v. Republic Federal S. & L. Ass'n*, 94 C 3789, 1995 WL 263457, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

23. The recoveries in the escrow overcharge cases alone are over $250 million. *Leff* was the seminal case on mortgage escrow overcharges.

24. The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

25. **Bankruptcy:** The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. *Conley v. Sears, Roebuck*, 1:97cv11149 (D.Mass); *Fisher v. Lechmere Inc.*, 1:97cv3065 (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000).

26. **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

a. Hidden finance charges resulting from pass-on of discounts on auto purchases. *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927 (7th Cir. 1998).

b. Misrepresentation of amounts disbursed for extended warranties. *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); *Slawson v. Currie Motors Lincoln Mercury, Inc.*, 94 C 2177, 1995 WL 22716, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 13, 1995); *Cirone-Shadow v. Union Nissan, Inc.*, 955 F.Supp. 938 (N.D.Ill. 1997) (same); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill. 1995); *Shields v. Lefta, Inc.*, 888 F. Supp. 891 (N.D.Ill. 1995).

c. Spot delivery. *Janikowski v. Lynch Ford, Inc.*, 98 C 8111, 1999 WL 608714 (N.D.Ill., Aug. 5, 1999); *Diaz v. Westgate Lincoln Mercury, Inc.*, 93 C 5428, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. Nov. 14, 1994); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

d. Force placed insurance. *Bermudez v. First of America Bank Champion, N.A.*, 860 F.Supp. 580 (N.D.Ill. 1994); *Travis v. Boulevard Bank*, 93 C 6847, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill. 1995); *Moore v. Fidelity Financial Services, Inc.*, 884 F. Supp. 288 (N.D.Ill. 1995).

e. Improper obligation of cosigners. *Lee v. Nationwide Cassell*, 174 Ill.2d 540, 675 N.E.2d 599 (1996); *Taylor v. Trans Acceptance Corp.*, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002).

f. Evasion of FTC holder rule. *Brown v. LaSalle Northwest Nat'l Bank*, 148 F.R.D. 584 (N.D.Ill. 1993), later opinion, 820 F.Supp. 1078 (N.D.Ill. 1993), later opinion, 92 C 8392, 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

27. These cases also had a substantial effect on industry practices. The warranty cases, such as *Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler*, and *Shields*, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

28. **Predatory lending practices:** The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, both as individual and class actions. *Jackson v. Payday Financial LLC*, 764 F.3d 765 (7th Cir. 2014), *cert. denied,* 135 S.Ct. 1894 (2015); *Livingston v. Fast Cash USA, Inc.,* 753 N.E.2d 572 (Ind. Sup. Ct. 2001); *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760 (7th Cir. 2006); *Laseter v. Climateguard Design & Installation LLC*, 931 F.Supp.2d 862 (N.D.Ill. 2013); *Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913 (N.D.Ill. 2008); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D.Ill. 2007); *Pena v. Freedom Mortg. Team, Inc.*, 07 C 552, 2007 WL 3223394, 2007 U.S. Dist. LEXIS 79817 (N.D.Ill., October 24, 2007); *Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760 (N.D.Ill. 2006); *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, 01 C 4488, 2002 WL 215530 (N.D.Ill., Feb. 12, 2002); *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D.Mich. 2001); *Van Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D.Ill. 2000),

later opinion, 114 F. Supp. 2d 731 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1085 (N.D.Ill. 2000); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D.Tex. 2000); *Donnelly v. Illini Cash Advance, Inc.*, 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); *Jones v. Kunin,* 99-818-GPM, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); *Davis v. Cash for Payday*, 193 F.R.D. 518 (N.D.Ill. 2000); *Reese v. Hammer Fin. Corp*., 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); *Pinkett v. Moolah Loan Co.*, 99 C 2700, 1999 WL 1080596, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); *Gutierrez v. Devon Fin. Servs.*, 99 C 2647, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); *Vance v. National Benefit Ass'n*, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

29. **Other consumer credit issues:** The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

a. Phony nonfiling insurance. *Edwards v. Your Credit Inc.*, 148 F.3d 427 (5th Cir. 1998); *Adams v. Plaza Finance Co.*, 168 F.3d 932 (7th Cir. 1999); *Johnson v. Aronson Furniture Co.*, 96 C 117, 1997 U.S. Dist. LEXIS 3979 (N.D.Ill., March 31, 1997), later opinion, 1993 WL 641342 (N.D.Ill., Sept. 11, 1998).

b. The McCarran Ferguson Act exemption. *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037 (7th Cir. 1998).

c. Loan flipping. *Emery v. American General*, 71 F.3d 1343 (7th Cir. 1995). *Emery* limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

d. Home improvement financing practices. *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; *Heastie v. Community Bank of Greater Peoria*, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).

e. Insurance packing. *Elliott v. ITT Corp.*, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

30. **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include *Lundquist v. Security Pacific Automotive Financial Services Corp*., 993 F.2d 11 (2d Cir. 1993); *Kedziora v. Citicorp Nat'l Services, Inc.*, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 91 C 3428, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); *Johnson v. Steven Sims Subaru and Subaru Leasing*, 92 C 6355, 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 WL 13074115, 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); *McCarthy v. PNC Credit Corp.*, 2:91CV00854 (PCD), 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *Simon v. World Omni Leasing Inc.*, 146 F.R.D. 197 (S.D.Ala. 1992).

31. *Lundquist* and *Highsmith* are leading cases; both held that commonly-used lease

forms violated the Consumer Leasing Act. As a result of the *Lundquist* case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

32. **Insurance litigation:** Often securing recovery for a class requires enforcement of the rights under the defendant's insurance policy. The firm has extensive experience with such litigation. Reported decisions in such cases include: *Record-A-Hit, Inc. v. Nat'l Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Pietras v. Sentry Ins. Co.*, 06 C 3576, 2007 WL 715759, 2007 U.S. Dist. LEXIS 16015 (N.D.Ill., March 6, 2007), later opinion, 513 F. Supp. 2d 983 (N.D.Ill. 2007); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 06 C 2092, 2007 WL 2608559, 2007 U.S. Dist. LEXIS 65339 (N.D.Ill., Aug. 31, 2007); *National Fire Ins. Co. v. Tri-State Hose & Fitting, Inc.*, 06 C 5256, 2007 U.S. Dist. LEXIS 45685 (N.D.Ill., June 21, 2007); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06 C 4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill., June 4, 2007).

33. Some of the other reported decisions in our cases include: *Elder v. Coronet Ins. Co.*, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); *Smith v. Keycorp Mtge., Inc.*, 151 B.R. 870 (N.D.Ill. 1992); *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); *Armstrong v. Edelson*, 718 F.Supp. 1372 (N.D.Ill. 1989); *Newman v. 1st 1440 Investment, Inc.,* 89 C 6708, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. Jan. 15, 1993); *Mountain States Tel. & Tel. Co.*, v. District Court, 778 P.2d 667 (Colo. 1989); *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D.Ill. 1988); *Haslam v. Lefta, Inc.*, 93 C 4311, 1994 WL 117463, 1994 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); *Source One Mortgage Services Corp. v. Jones*, 88 C 8441, 1994 WL 13664, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994); *Wilson v. Harris N.A.*, 06 C 5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007). *Wendorf v. Landers*, 755 F.Supp.2d 972 (N.D.Ill. 2010); *QuickClick Loans LLC v. Russell*, 407 Ill.App.3d 46; 943 N.E.2d 166 (1st Dist. 2011), *pet. denied*, 949 N.E.2d 1103 (2011) and *Adkins v. Nestle Purina Petcare Co.,* 973 F.Supp.2d 905 (N.D.Ill. 2013).

34. *Gordon v. Boden* is the first decision approving "fluid recovery" in an Illinois class action. *Elder v. Coronet Insurance* held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

35. The hourly rates for the attorneys set forth below, are the same as the regular current rates charged for their services in other contingent matters in class action litigation. They are also consistent with fees charged to occasional hourly paying clients. The firm adjusts them annually to account for inflation and increasing experience and they are consistent with the rates charged by attorneys of comparable experience and expertise in the Chicago area. The rates listed and used in this case represent rates previously approved in a number of cases plus an annual adjustment.

36. Examples of the approval of counsel's rates include:

a. The rates charged by Edelman, Combs, Latturner & Goodwin, LLC were used as a benchmark by Judge Kennelly in *In re Southwest Airlines Voucher Litigation*, No. 11 C 8176, 2013 WL 5497275 (N.D.Ill., Oct. 3, 2013), at 19-20:

> In particular, the Court has reviewed fee awards approved for the law firm of Edelman, Combs, Latturner & Goodwin, a Chicago law firm that has a long-established practice in the same field as Siprut, PC, the firm representing the plaintiff class in this case. Here are some examples. In *Jablonski v. Riverwalk Holdings, Ltd.*, No. 11 C 840, 2012 WL 3043687, at *1 (N.D. Ill. July 12, 2012), Judge Blanche Manning approved rates of $400 per hour for work done in 2011 by attorneys Daniel Edelman, Catherine Combs, and James Latturner, who had,

respectively, thirty-six, thirty-six, and fifty years of practice experience. *Id.* at *1. In 2009, in the case of *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954, at *20 (N.D. Ill. Dec. 9, 2009), Judge Robert Gettleman appears to have okayed a $550 rate for attorney Edelman. That same year, in *Jones v. Ameriquest Mortg. Co.*, No. 05 C 432, 2009 WL 631617, at *4 (N.D. Ill. Mar. 10, 2009), Judge David Coar approved rates of $465 per hour for partners Latturner, Combs, and Tara Goodwin, and a rate of $250 per hour for an associate who was six or seven years out of law school during the relevant period. In 2008, Judge Sam Der-Yeghiayan approved rates of $450 per hour for partners at the Edelman firm and $210 per hour for the same associate. *See Hamm v. Ameriquest Mortg. Co.*, 549 F. Supp. 2d 1018, 1022 (N.D. Ill. 2008).

On September 25, 2013, the Court considered a fee award (a very modest one) in a case brought by the Edelman firm in which it obtained a default judgment. That firm submitted a very comprehensive affidavit by its lead partner, Daniel Edelman, supporting the following hourly rates claimed for each of its partners and associates:

- $550 for partners Edelman (thirty-seven years of experience), Combs (thirty-seven years), and Latturner (fifty-one years);

- $505 for partner Goodwin (twenty-two years);

- $445 for partner Julie Clark (thirteen years);

- $400 for partner Heather Kolbus (eleven years);

- $355 for a partner with ten years experience;

- $230 to $290 for associates; and

- $100 to $125 for paralegals.

*See Quazi v. Lizetty and Assoc. Grp. LLC*, Case No. 13 C 4512, dkt. no. 19-5 (affid. of Daniel Edelman). This Court's own experience in dealing with fee awards (mostly agreed-upon awards) in consumer cases is generally consistent with a range bracketed on the higher end by the hourly rates proposed for lawyers from the Edelman firm in the *Quazi* case and, at the lower end, with the awards approved by Judges Der-Yeghiayan, Coar, and Gettleman in the cases cited earlier. The latter are, at this point, several years old, indicating that they may not actually represent appropriate current rates. . . .

b. The rates of $700 for Daniel A. Edelman was approved in *Manuel v. Caliber Home Loans, Inc.*, 14-5233-SRC-CLW (D. N.J. on August 20, 2015. The order is attached as Appendix A.

c. Rates of $550 for Daniel A. Edelman and $230 for Cassandra P. Miller were approved in *Nadyenova v. Midland Funding, et al.*, 12-cv-632 (N.D.Ill.), on July 11, 2012. The order is attached as Appendix B.

d. Rates of $550 for Daniel A. Edelman, James O. Latturner and Cathleen M. Combs, $400 for former partner, Michelle R. Teggelaar, and $250 for former associate Jeremy P. Monteiro were requested in the Plaintiff's Final Approval Memorandum and approved in *Bruce v. Wells Fargo Bank*, 2:05cv243 (N.D.Ind.), on October 18, 2007 (Transcript of proceedings, Appendix C).

e. A rate of $325 for Ms. Hardy was approved by the Honorable Arthur D. Spatt at a fairness hearing in the Eastern District of New York in 2014, *Altagracia Diaz v. Residential Credit Solutions,* 12-cv-03781 (Appendix D).

37. In determining the rates charged by the firm charges and requests, counsel consults surveys of rates charged by other Chicago law firms. Such surveys have been relied upon by courts in awarding fees. E.g., *FDIC v. Morris*, 1992 U.S. Dist. LEXIS 9439 (N.D.Ill., June 29, 1992); *Alliance to End Repression v. City of Chicago*, 1993 U.S. Dist. LEXIS 1972 (N.D.Ill., Feb. 22, 1993).

38. I am reasonably confident that the rates are accurate, based on my personal knowledge of rates in the legal community, court awards, negotiations with defendants, and discussions with other attorneys.

39. The rates we used are also consistent with fee awards by courts in this or other comparable areas for comparable work:

a. In *Harris N.A. v. Acadia Investments*, 09 C 6661, 2012 WL 1681985 (N.D.Ill., May 14, 2012) (Schenkier, M.J.), a commercial dispute in which the fees paid by plaintiff were shifted to the defendant pursuant to a contractual provision, the court awarded $775/ hour for a 1984 partner, $745/ hour for a 1985 partner, $700/ hour for a 1992 partner, and $570/ hour for a 1995 partner. Copies of the affidavits establishing these rates are in Appendix E.

b. In *Winston v. O'Brien*, 10 C 8218, 2013 WL 2897161 (N.D.Ill., June 13, 2013) (Bucklo, J.), a police excessive force case, court awarded $535/ hour for lead counsel, $450/ hour for a 1994 graduate, $225/ hour for a second year associate, and $125 /hour for paralegal work.

c. In *McDonough v. Briatta*, 06 C 2732, 2013 WL 1303800 (N.D.Ill., March 27, 2013) (Pallmeyer, J.), a First Amendment retaliation claim, the court awarded $500/ hour for 1964 and 1984 partners, $450/ hour for a 1993 graduate, $425/ hour for a 1999 graduate, $400/ hour for a 2001 graduate, $285/ hour for 2006 and 2007 graduates, and $100/ hour for paralegal time.

d. In *Scott v. Illinois Youth Center Joliet*, 09 C 1633, 2011 WL 586408 (N.D.Ill., Feb. 9, 2011), an individual employment discrimination case, Magistrate Judge Brown awarded $100/ hour for paralegal time, $250/ hour for an associate with 5 years experience, and $285-$390/ hour for attorneys with 12-18 years experience, noting that only limited justification had been provided.

e. In *Richardson v. City of Chicago*, 08 C 4824, 2012 WL 6185867 (N.D.Ill., Nov. 20, 2012) (Cole, M.J.), a police misconduct case, the court approved rates of $425/ hour for an attorney with 17 years experience, $400/ hour for an attorney with 9 years experience, $300/ hour for an attorney with 7 years experience, and $175/ hour for a second year associate.

f. In *Covington v. District of Columbia*, 839 F. Supp. 894 (D.D.C., December 13, 1993), Judge Lamberth found, on the basis of court-approved surveys of rates in the Washington, D.C., area, that it was appropriate to award $260 per hour to attorneys with between 11 and 19 years experience for the time period 1992-93. He further found that it was appropriate to have an annual increment of $10 per year or, alternatively, to multiply by 103.4% in accordance with the Consumer Price Index (the result is approximately the same). He also noted that it had been relied upon by six other District Judges in the District of Columbia and the Court of Appeals for the District of Columbia Circuit. Judge Lamberth awarded current rates for all work done in the past, in lieu of making the award at the then-current rate and awarding interest on it.

g. The figures used in the *Covington* case have been updated each year by the office of the U. S. Attorney for the District of Columbia. The updated figures (through 2017) are in the chart attached as Appendix F, available on the Internet site of the U. S Attorney's office ("Laffey Matrix", after *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983)).

40. The usual rates which I and the others in my firm charge at the present time are as follows:

a. Daniel Edelman, Cathleen Combs, and James Latturner (partners): $700 an hour;

b. Tara Goodwin (partner): $600 an hour;

c. Julie Clark (partner): $500 an hour;

d. Heather Kolbus (partner): $500 an hour;

e. Cassandra P. Miller (partner): $450 an hour;

f. Tiffany N. Hardy (partner): $450 an hour;

g. Associates: $230 to 250 an hour;

j. Paralegals: $100-$125 an hour (based upon experience).

41. All attorneys and legal assistants in my firm are required to and do in fact keep track of their time on a contemporaneous basis, on computer. Everyone enters their time into a computer program, by case number. The computer system automatically sorts the entries by case and generates totals. Expenses are entered into the same computer program as they are incurred. The printouts for this case are attached as Appendix G and Appendix H..

Executed at Chicago, Illinois.

/s/ Daniel A. Edelman
Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

# APPENDIX A

CL

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LUTHER B. MANUEL JR. and GERTRUDE MANUEL, on behalf of themselves and the class members described herein,

Plaintiffs,

vs.

CALIBER HOME LOANS, INC.; U.S. BANK TRUST, N.A., as Trustee of LSF8 MASTER PARTICIPATION TRUST; WELLS FARGO DELAWARE TRUST COMPANY, N.A., as Trustee for VERICREST OPPORTUNITY LOAN TRUST 2013 NPL2 and VERICREST OPPORTUNITY LOAN TRUST 2014 NPL2; and DOES 1-25,

Defendants.

Case No.: 2:14-cv-05233-SRC-CLW

~~[PROPOSED]~~
**FINAL APPROVAL ORDER**

**WHEREFORE**, it appearing to the Court that:

A. On May 5, 2015, this Court entered a Preliminary Approval Order which, among other things, preliminarily and conditionally certified this lawsuit to proceed as a class action for settlement purposes only, defined the Settlement Class and Settlement Class Claims, appointed Settlement Class Counsel, preliminarily approved the proposed Stipulation of Settlement which would be binding on the Settlement Class, provided for notice to the Settlement Class including an opportunity for Settlement Class members to request exclusion from the Settlement Class and to object to the proposed Stipulation of Settlement, and scheduled a hearing ("Final Hearing") for August 20, 2015, to consider any objections and to determine whether the proposed settlement is fair, reasonable, and adequate.

B. In satisfaction of Fed. R. Civ. P. 23(e)(3), a copy of the Stipulation of Settlement was provided to the Court with the Parties' Joint Motion seeking the entry of the Preliminary Approval Order.

C. In accordance with the Court's Preliminary Approval Order, on June 5, 2015, actual notice was sent by first class mail to 15,050 Settlement Class Members by Heffler Claims Group (the "Class Administrator"). A total of 1,331 notices were returned by the United States Postal Service as undeliverable with no forwarding address or further information; 49 notices were returned by the United States Postal Service with a new address and successfully re-mailed; and a total of 3,338 claim forms have been received.

D. In accordance with the Court's Preliminary Approval Order, on June 5, 2015, the Class Administrator established a toll-free telephone number to answer questions from Settlement Class Members through an interactive voice response (IVR) system with an option to leave a message to be responded to by Class Counsel.

E. On August 20, 2015, in accordance with the Preliminary Approval Order [Doc. 32] and Fed. R. Civ. P. 23(e)(2), counsel for the Parties timely appeared for the Final Fairness Hearing to determine whether the action satisfies the applicable prerequisites for class action treatment and whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be approved by the Court;

F. The Class Members were given an opportunity to object to the settlement. Only one Class Member, through counsel, objected to the settlement ("Objector") [Doc. 35]. The Objector's counsel appeared at the Final Hearing and presented the Objector's arguments against the Settlement. The Court having heard and considered the Objections finds them to be without merit and accordingly overrules them for the reasons stated on the record.

G. The Class Members who made valid and timely requests for exclusion are excluded from the class and settlement and are not bound by this Order. Only 31 Class Members requested exclusion. The identities of such persons are set forth in **Exhibit A**, attached hereto; and

H. With the Court having concluded that the proposed settlement is fair, reasonable, and adequate; and the Court being duly advised in the premises, and for good cause shown;

**IT IS HEREBY ORDERED AND ADJUDGED:**

1. The Court confirms its certification in the Preliminary Approval Order of this lawsuit as a class action for settlement purposes only and, in accordance with Fed. R. Civ. P. 23(b)(3), defines the "Settlement Class" as:

> All persons who were sent the following letters from Caliber on the following dates: (1) A letter with the title "Notice of Sale of Ownership of Mortgage Loan", dated January 9, 2014; (2) A letter with the title "Welcome to Caliber", dated February 12, 2014; and, (3) A letter listing the creditor and principal amount of the loan, dated February 18, 2014.

The Court further defines the "Settlement Class Claims" as those claims of the Settlement Class arising from written communications sent by Caliber, in connection with its servicing of residential mortgage obligations, which allegedly failed to make accurate disclosures as required by 15 U.S.C. §1692(g)(a)(2), 12 U.S.C. §2605, and 15 U.S.C. §1641(g).

2. The Court declares that the Parties' Notice Plan as set forth in the Stipulation, including the notice mailed to Class Members, satisfied the requirements of Fed. R. Civ. P. 23 and constitutional due process.

3. The Court approves the disbursement of the Settlement Fund as provided for in the Stipulation of Settlement and directs that the Class Administrator disburse the payments in accordance with the terms of the Stipulation.

4. The Court approves the award of attorneys' fees and costs to Settlement Class Counsel, in the amount of 288,000, and declares such fees and costs, and the hourly rates sought to be fair and reasonable.

5. The Stipulation, which was filed with the Court on April 3, 2015 [Doc. 30-2], and which shall be deemed incorporated herein by reference in its entirety, is finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any subsequent order issued by this Court.

6. This Order is binding on all Class Members, except those individuals identified in ***Exhibit A*** hereto, who validly and timely excluded themselves from the Settlement Class.

7. The Class Representatives, Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims against any of the Released Parties, as set forth in the Stipulation. Pursuant to the release contained in the Stipulation, the Released Claims are compromised, settled, released, discharged, and dismissed with prejudice by virtue of these proceedings and this Order.

8. The Lawsuit is hereby dismissed with prejudice in all respects.

9. This Order is not, and shall not be construed as, an admission by Defendants of any liability or wrongdoing in this or in any other proceeding.

10. The Court retains jurisdiction over the interpretation, enforcement, and implementation of the Stipulation of Settlement and this Final Order. Except as retained, all claims against all Defendants are dismissed with prejudice and without taxing costs.

**IT IS SO ORDERED:**

HONORABLE STANLEY R. CHESLER
Judge, United States District Court

Dated: 8/20/15

# EXHIBIT "A"

| First Name | Last Name | Exclusion # |
|---|---|---|
| Steven | Catalfamo | 1 |
| Lazina | King | 2 |
| Rebecca | Luker | 3 |
| Charles | Wild | 4 |
| Trevor | Nightengale | 5 |
| Elwood | Gilchrist | 6 |
| Rhonda | Evans | 7 |
| Melissa | Filipos | 8 |
| Paul | Zawadzke | 9 |
| [redacted] | [redacted] | [redacted] |
| Pamela | Carrig | 11 |
| Edward | Accomando | 12 |
| Latif | Giwa | 13 |
| Madison | Rogers | 15 |
| Hieu | Nguyen | 16 |
| William | Pastino | 17 |
| Suzanne | Thompson | 19 |
| Edna | Albright | 20 |
| Beverly | Marretta | 21 |
| Paula | Mexner | 22 |
| Fitzroy | Lyte | 24 |
| Hugh | Mills | 25 |
| Theresa | Jones | 26 |
| Richard | Koesler | 27 |
| David | Walkerr | 28 |
| Kelly | Smith | 29 |
| Laura | Wellnitz | 30 |
| Charlie | Smith | 31 |
| Michael | Szczepaniak | 32 |
| Ronald | Carter | 33 |
| Rodell | Cotrell | 34 |

| First Name | Last Name | Exclusion # |
|---|---|---|
| Anuoluwa | Giwa | 14 |
| Heather | Rogers | 15 |
| Roberta | Pastino | 18 |
| Roberta | McGuane | 23 |
| San Juan | Koesler | 27 |

# APPENDIX B

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John J. Tharp, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 12-c-632 | DATE | 7/11/2012 |
| CASE TITLE | Naydenova vs. Midland Funding et al. | | |

DOCKET ENTRY TEXT

Status hearing held. Parties waive briefing on fee petition following presentation of positions in open court and submit issue to Court for resolution. Upon review of Parties' LR 54.3(e) Joint Statement, the Court awards fees and costs to Plaintiff in the amount of $2,529.98. For further details see text below. This amount stands as the "reasonable attorneys' fees and costs" included in the Court's Judgment [22] entered 4/24/12. Case terminated.

■[ For further details see text below.] Docketing to mail notices.

00:06

## STATEMENT

This Fair Debt Collection Practices Act case was resolved by Plaintiff's acceptance of Defendants' Offer of Judgment, served on April 19, 2012, pursuant to FRCP 68. The Offer of Judgment was "in the amount of $1,001 plus reasonable attorneys' fees and costs, as determined by the Court and as allowed by law." This Court entered judgment on the accepted offer and directed the parties to confer regarding the amount of reasonable attorneys' fees and costs to be included in the judgment. On July 9, 2012, the parties reported by means of a Local Rule 54.3(e) Joint Statement, advising that they had been unable to reach agreement on the amount of reasonable attorneys' fees and costs to be included in the judgment. At the status hearing on July 12, the parties waived further briefing on the issue of the amount of attorneys' fees and costs to be awarded, and submitted the issue to the Court for determination. Having reviewed the Joint Statement, including the exhibits supplied by the parties, the Court concludes that attorneys' fees and costs in the amount of $2,529.98 should be awarded to Plaintiffs under the Offer of Judgment.

The Court finds in general that the fees charged, and effort expended, by Plaintiff's counsel are reasonable, with the exception that the Court concurs with Defendant's objection that it is unnecessary to have five lawyers (four of whom are partners) involved in a case in which the issues were not complex and which was resolved almost immediately. The Court has therefore deducted the time of the three partners who were most tangentially involved in the drafting and review of the complaint (at least as measured by the time they spent on that task). Defendant also objected to the rates charged by these attorneys, but as their time has been excluded, the objection to those rates is moot. By contrast, Defendant's Exhibit B letter to Plaintiff acknowledges that the rates of $550 per hour for Daniel Edelman and $230/hour for Cassandra Miller are reasonable and, accordingly, the Court accepts those rates, noting as well that"[c]ourts in this circuit generally have awarded somewhere in the range of $200 to $300 per hour for lawyers with significant experience handling these types of cases." See *Brown v. Patelco Credit Union*, 2011 WL 4375865, *3 (N.D.Ill.).

**STATEMENT**

While Mr. Edelman's rate is substantially higher, in view of his status as one of the senior partners in the firm and the limited time expended (one hour), the Court does not find the request to recover his fees to be unreasonable, particularly where he is the only partner whose fees will be recovered.

Defendants object to time entries by paralegals that they characterize as "secretarial" in nature. While a few of these tasks are arguably non-legal in nature (*e.g.*, "prep letter and mailing to process server"), the Court finds that most of the paralegal tasks identified in the time entries require specialized knowledge and/or experience that goes beyond generically clerical or secretarial tasks. The filing of specialized forms, such as appearances and civil cover sheets, are examples. In any event, the rate charged by the paralegals performing these task was $100/hour, and the Court finds that rate reasonable whether the tasks are characterized as "legal" or "clerical" in nature. See, *e.g.*, *Smith v. Astrue*, 2011 WL 2064843, *2 (S.D. Ill.) (reducing attorney hours devoted to similar clerical tasks by 60% where they could have been performed by an experienced secretary or paralegal; the rates charged by paralegals here are approximately 60% lower than the $230 hour rate charged by the associate attorney assigned to the case).

Defendants object as well to the time entries related to the drafting of a settlement agreement, but the Court finds that effort to have been a reasonable attempt to try to resolve the case (indeed, counsel for the defendants undoubtedly incurred time on the same pursuit). Further, the fact that the Plaintiffs had spent time drafting settlement language was obviously known to the Defendants when the offer of judgment was made; had they wished to exclude time for that purpose, they could have so indicated in their Offer.

The Court does conclude, however, that fees incurred after Plaintiff accepted the Offer of Judgment should be excluded. By its terms, Rule 68 provides only for the recovery of "costs then accrued," that is, the costs incurred up to the point that the Offer of Judgment is made. Once the Rule 68 offer was made, "the clock stopped ticking." *Patelco Credit Union*, 2011 WL 4375865, *6. Attorney's fees are considered "costs" under Rule 68 when the underlying statute provides for attorney's fees to be awarded as part of the costs.

*Marek v. Chesney*, 473 U.S. 1, 2 (1985) ("[T]he term costs in the Rule was intended to refer to all costs properly awardable under the relevant substantive statute."). Accordingly, there is no basis to assess fees differently in the context of an Offer of Judgment. Defendants' Offer did not extend to cover fees and costs incurred after it was made and Plaintiff's acceptance of that offer renders its request for fees and costs incurred after that date unreasonable.

The Court therefore calculates the fees and costs to be awarded to Plaintiff as follows:

| | |
|---|---|
| Plaintiff's total fees and costs: | $4,011.53 |
| Less: | |
| JOL Time | 330.00 |
| MRT Time | 160.00 |
| CMC Time | 110.00 |
| Time incurred after offer was made (4/19/12) | 878.00 |
| Costs incurred after offer was made (4/19/12) | 3.55 |
| Revised total fees and costs | $2,529.98 |

# APPENDIX C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DARRELL BRUCE,
PLAINTIFF,
VS. ) Cause: 2:05 CV 243
WELLS FARGO BANK NA,
DEFENDANT.

The FAIRNESS HEARING in the above-entitled matter was commenced before Honorable Philip P. Simon judge of said court, at the Federal Building, 5400 Federal Plaza, Hammond, Indiana, on the 18TH day of October, 2007 commencing at the hour of 1:20 in the afternoon.

Sharon Boleck Mroz, CSR, RPR, CPE
Official Court Reporter
US District Court
Northern District of Indiana
Hammond Division
5400 Federal Plaza
Hammond, IN 46320
(219) 852-6728

Appearances:

Ms. Michelle R. Teggelaar
Edelman Combs Latturner & Goodwin
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603

On behalf of the Plaintiff;

Mr. Robert J.Emanuel PHV
Burke Warren MacKay and Serritella
330 N.Wabash Avenue
Chicago, IL 60611

On behalf of the Defendant.



INDEX

Hearing - 5



EXHIBITS

(None)

THE CLERK: All rise.

THE COURT: You can be seated. Good afternoon everyone.

We're on the record. The cause number is 2:05 CV 243 Bruce versus Wells Fargo.

Back on the 21st day of June of this year, I preliminarily approved a class action settlement, and I set this date for the fairness hearing.

So, if you all can introduce who you are so I know who I'm dealing with here.

Sir.

MR. EMANUEL: My name is Bob Emanuel. E M A N U E L. And I represent Wells Fargo, and I am very sorry that I was tardy today.

I went to the 507 building.

THE COURT: Got it.

We have been here almost what, five years, Noel?

MR. EMANUEL: I've been to this building before. I tried using a navigation system which I'm not really --

THE COURT: Don't worry about it.

MR. EMANUEL: Obviously.

THE COURT: Ma'am. You Miss Teggelaar?

MS. TEGGELAAR: Miss Teggelaar, Plaintiff.

THE COURT: Nice to see you.

All right. Just for the record, it is now 21 minutes after 1:00.

This hearing was scheduled to begin at 1:00. There is nobody in the courtroom other than the party -- other than the lawyers and people from the court staff and the court security officer.

Evidently, there is no class member who has saw fit to appear to object to the settlement.

So, my -- ordinarily my procedure, Miss Teggelaar, is just for you to give a brief summary as to what the terms of the settlement are for the record, and I'll make my findings on the fair and reasonableness of the settlement.

So, you may proceed.

MS. TEGGELAAR: Pursuant to the settlement, the Plaintiff Darrell Bruce is to receive a thousand dollars which is the maximum provided for by the statute. Each class member that submits a claim form will be entitled to receive a payment of $200, and the settlement provides for payment of $75,000 in fees in addition to the class recovery.

There were 4,377 notices mailed to the class members. And there were a relatively low number returned, undeliverable, 210.

There were eight that were returned and remailed, but we received a very, very --

THE COURT: That is a very high percentage, isn't it?

MS. TEGGELAAR: -- of claim forms back in this case. Actually there is only one other case that we had that anyone at my

firm could recall that was rate -- or return this high.

There were 1,500 timely. There were 25 late that we had as of October 5. That is about one-third of the class members who decided to return a claim form, which I think shows an overwhelming positive response from the class. We usually see about ten percent returning claim forms.

So, the class then -- recovery was about $300,000. It would be 305,000 if the Court elects to allow those late claim forms.

We did want to draw to the Court's attention that there were some other claim forms that were received that did not appear to be valid. They were all sent by individuals that had the same address as the class member. They probably were family or friends, and individuals did -- that were class members also returned claim forms.

So those, after discussing it, we were -- decided we were not going to honor those claims forms. They did not appear to be valid, and we wanted to bring that to the Court's attention.

There was only one other issue we found out today that the CAFA notice was not provided.

THE COURT: I'm sorry. I can't hear you.

MS. TEGGELAAR: I'm sorry.

The CAFA notice was not provided at the time that was required by statute and Defendant can probably speak. It was apparently a miscommunication with the administrator that was

handling it they believed to have done it.

And under CAFA, the Court cannot enter that final approval order until after 90 days after the notice has been provided. So, in fact we had discussed what to do in this circumstance, and actually this summer I had a case where that happened, and the defendants didn't provide it on time. And what the Judge did -- that was in Central District of Illinois. The judge held the hearing, didn't enter the final order, made findings that he had approved the settlement. As soon as we -- the time had passed since the notice was provided, that it could be unclear that no state or Federal authorities wished to appear and object to the settlement.

THE COURT: When will that be?

MR. EMANUEL: It -- and let me address this.

And I -- I probably ought to be in the position of thanking Michelle and apologizing to her at the same time.

CAFA as you know is a new statute. Many of the cases -- I've been doing these cases for 15-some years.

And some settlement administrators, the one that I work with, picked up on it right away and sent out the CAFA notice, which is basically a notice to any Federal authority that might have an interest. And I did get correspondence from them saying the quote "notices" had gone out.

I -- it's my fault at the end of the day. I did not drill down and find out did they mean the CAFA notice.

So, ultimately, what happened is that CAFA notice did not go out. And until it's been out and there have been 90 days, for someone to speak up, my understanding is consistent with Michelle's, no final order can be entered.

It does leave the class and Plaintiff's counsel in a position that is not enviable and we have to figure out what we ought do about that.

I have -- as the Court noted, never -- I mean, I think this settlement is -- usually defendants don't speak up much in these hearings, but I've never seen a turnout like this.

We usually -- Michelle says ten. We usually see seven, eight percent.

That said, I'm not worried about anyone having an objection to the settlement.

What I'm wondering if is there any way the Court can give final approval to the settlement or approve the settlement and retain jurisdiction to alter that finding if there is an objection, and I don't know if that's -- if that's possible, so that we can go ahead and pay the class members and pay Plaintiff's counsel.

THE COURT: Miss Teggelaar. I don't know.

MS. TEGGELAAR: Well, that's also come up because recently the Seventh Circuit has said we don't want any orders entered that approve the settlement, retain jurisdiction because that --

THE COURT: More than familiar with them.

MS. TEGGELAAR: What we have been doing is alternatively to that is having the case dismissed without prejudice, the Court finding that the settlement should be approved but dismissing without prejudice, subject to the settlement being implemented. And then at that time have the order become with prejudice. And I mean, I'm not sure if we can -- technically wouldn't be the final order being entered.

THE COURT: When was this CAFA notice sent?

MR. EMANUEL: It has not.

THE COURT: Has not even occurred.

MR. EMANUEL: What happened today is Michelle out of courtesy said to me, "Bob, did you make sure to file the CAFA notice?"

And I called the settlement administrator and said -- because he sent up a bunch of notices that were filed in this case.

And I said, did you send out the CAFA notice. I cannot find it.

And he said -- and I don't want to imitate him; he is from the very deep south. He said basically, I don't know what a CAFA notice is.

And I say this to be candid with the Court.

It did not go out. It will go out today, and then we have a 90 day period. But I think it would be consistent if --

THE COURT: What am I supposed to do here then? What if one in a hundred the notice gets out, somebody comes in here and

gripes about it and changes my mind. It's not very likely. I can't unring the bell. I can't get money back.

I can't -- you know, I mean, in many ways, I'm -- I mean, I think I can make the findings today as it stands right now so we don't even have to have another hearing, that it's a fair and reasonable settlement, that it's -- and make whatever findings I need to make, but take under advisement the possible reconsideration of that should the CAFA notice generate some adverse findings. And unfortunately, you're going to have to wait to get your money, unless you have some other solution here.

MS. TEGGELAAR: Well, it's just -- it's the difficulty with the class members. I mean, if it's just a question of waiting, you know, three months to get our fees to have to enter it, that is something we have to deal with, but we already had those individuals calling and asking about that, and --

THE COURT: So, what's the solution? What am I missing here? What would be the solution?

MS. TEGGELAAR: I really don't have a solution to that. I mean, I -- personally, I think the Defendant should issue the class checks. They want to wait on our fees, do it. It's their risk because it's their mistake. We should have been prepared to go forwarded too. The longer you wait, the less likely those checks get to the class members and be cashed.

That is something we see a lot, the longer it takes. And we could say the Defendant then has to try to skip trace them or

something if that does happen later.

THE COURT: Mr. Emanuel.

MR. EMANUEL: Miss Teggelaar makes good points.

There is some small, I think very small risk although we do -- first of all, she mentioned some late claims.

Once we have come to a settlement, you know, we shall -- we generally -- more than generally. I think we have 25 late claims. We are going to pay those claims. And in any case, whether you approved it today or whether it was in 90 days. If we send a check out to someone and then it comes back, we track that person down.

They don't just leave the checks stale.

And here, the amount of money is large enough that people are going to get into contact with us.

That's why you have such a high response here. It was a larger settlement per person. I really do -- I apologize to the Court and I apologize to Miss Teggelaar for the issue with the notice. It is embarrassing for me, but I have to be candid and take responsibility for it.

And if there is a way that the Court can -- can approve the settlement and retain jurisdiction, once the settlement is approved, we'd be happy to start cutting the necessary checks.

THE COURT: I'll approve the settlement today.

MR. EMANUEL: Okay.

THE COURT: I mean, there is nothing about this

settlement that is unreasonable.

I was prepared to do that.

My concern is maybe not -- I don't quite understand what the effect of the CAFA notice is. Who does it go to, and what is the down side risk here?

MR. EMANUEL: It would go to the State Attorney General. It would go to, I believe, a variety of federal agencies.

MS. TEGGELAAR: I think they only give it to the US Attorney.

MR. EMANUEL: Okay, that's it, not the OCC?

MS. TEGGELAAR: Since this is just an Indiana class.

MR. EMANUEL: Okay. And in my experience, from what I read in the time that Michelle raised this issue -- I suppose I shouldn't say my experience, I might be overstating things.

I think the chances of getting an objection here are very, very slim, and I think the chances of getting an objection that could be sustained are even slimmer.

THE COURT: All right.

Here's what I'm going to do. I'm going to issue -- I'm going to approve the settlement.

MR. EMANUEL: Okay.

THE COURT: And I'm going to order you to pay the class members and counsel immediately, or --

MR. EMANUEL: Pursuant to --

THE COURT: Pursuant to the agreement, a few weeks.

MS. TEGGELAAR: Right.

THE COURT: And I will simply dismiss the case without prejudice, pending -- even though I probably can't do that, but I will, because this is -- you know, this is -- the risk is so low here.

MR. EMANUEL: Uh-huh.

THE COURT: And we'll just keep it -- I'll wait to hear back from you all --

MR. EMANUEL: Okay.

THE COURT: -- in 90 days, in which case you can file something that will tell me that you can dismiss it with prejudice, because nobody has objected to it.

MR. EMANUEL: And specifically, what I would propose is that perhaps we even set a -- I don't know if you can set a status date that in 91 days, we will provide the Court with proof that the CAFA notice went out, and that there has been no objection or response, if that's what the Court wants.

THE COURT: That's fine.

I don't think we have to have a hearing. In my world on the 91st day you'll just file something that will tickle us that will say, oh, by the way we sent out the notice, we got no response, the dismissal can be converted from without prejudice to with prejudice and the case is over.

MR. EMANUEL: Okay.

MS. TEGGELAAR: There is one other little glitch.

THE COURT: Sure.

MS. TEGGELAAR: That's because of the Seventh Circuit, not because of the CAFA notice, because we need to make sure everything is done in the settlement before it's final because the court can't dismiss, retain jurisdiction, we need to make sure that we can do that up and through the time when they would have to give the cy pres award.

So when I originally calculated that out before I was aware of this issue, triggered by the approval today and then when the payment would come due and checks would be issued to class members, the settlement agreement provides that their checks are good for 90 days. And after the checks are void, then the Defendant has to give out cash funds to the cy pres.

I think I calculated that out to be about six months total into April. And I think in the draft order I submitted I just left a blank that this order will become final on X date unless--

MR. EMANUEL: Can I -- because if the case can't be dismissed with prejudice for six months anyways --

MS. TEGGELAAR: Then this will be done well before that.

MR. EMANUEL: Yes.

THE COURT: Okay.

MS. TEGGELAAR: I mean, I could --

MR. EMANUEL: Or the --

THE COURT: One at a time.

MS. TEGGELAAR: I'm sorry.

I can add a paragraph actually in what I submitted that has a separate requirement that verification after the 90 days passed, defendant will file something that -- saying that no objection has been made, and leave the paragraph in here as it is about being converted to dismissal with prejudice, and we can pick a date in April some time.

THE COURT: That's fine. Why don't you go ahead and do that by a week from today.

MS. TEGGELAAR: I mean, I can probably as soon as I get back to my office, I can make that change --

THE COURT: Fair enough. Okay.

MS. TEGGELAAR: -- and send it over.

THE COURT: And you wanted to appear here telephonically?

MR. EMANUEL: Today I asked if I could. We had done it in the past in this case frequently.

I want to make clear that my request to appear telephonically was made before I got Michelle's e-mail.

THE COURT: Fair enough.

MR. EMANUEL: Then when I talked to Michelle because I told Michelle I was hoping -- she said, are you going to appear telephonically. I said, not now. So --

THE COURT: All right.

MR. EMANUEL: Usually at a -- at a final approval hearing, I did it in front of Judge Zagle. Usually I say nothing

other than we think the settlement is fair.

THE COURT: I'm relatively new at this. I've probably done five of these, but you know, you never know when somebody is going to walk in the door and say, I don't like what I'm seeing here.

MR. EMANUEL: Well, I would appear telephonically and our local counsel is going to come and sit where I'm sitting. Once the CAFA issue came up, I thought it was important for me to be here and explain.

THE COURT: You thought it was important go to 507 State Street.

MR. EMANUEL: It's been a -- not been my best day.

THE COURT: All right.

Here are the factors I have to consider in deciding whether to grant final approval of a class action settlement: The strength of the Plaintiff's case on the merits as measured against the terms of the settlement; the complexity, length and expense of the continued litigation; the amount of opposition to the settlement among class members; the presence of any collusion in gaining a settlement; the stage that the proceedings are in; and the amount of discovery that's been completed. In taking -- in consideration all those factors, this is a very favorable settlement to the Plaintiff class as I see it, although I -- I felt that it was a fairly strong case for the plaintiff. Although I know that there's been no admission of liability here, I had

concern with this -- with this particular solicitation. So, it -- it was a strong case and that's perhaps what led to a favorable settlement in my judgment for the Plaintiff's class.

The law firm that is representing the Plaintiff's class has appeared in this Court and across the Midwest and I assume around the country litigating consumer class action litigation, and as always, done excellent work in my court. And this was a complex piece of litigation.

The fact that we have no one here in court opposing the settlement, and more importantly the fact that there's been really a very amazing response from the class participating in the settlement, approximately a third of the prospective class or of the class have returned the forms to -- asking to participate really indicates the overwhelming approval that the class members have in the settlement that's been negotiated by the Plaintiff's counsel.

There's no evidence at all of any -- of any inclusion, and -- and on the issue of attorney's fees, I think they are more than reasonable on a case in which approximately $300,000 is going to be paid to the class. I guess what would amount to approximately 25 percent of that amount in addition to that as attorney's fees does not strike me at all as unreasonable and the rates that were requested in the loadstar method that are set out in the petition to approve the settlement, I find to be totally reasonable given the prevailing market rates for this type of

litigation.

I will also approve the late filers, the people who filed the claim forms late. I believe there is 25 of them. I would include them as part of the final judgment here. And that they too can participate in the settlement.

Okay. Anything else I need to do then?

MS. TEGGELAAR: I don't think so.

THE COURT: No?

MR. EMANUEL: No, your Honor.

THE COURT: So then I want to make sure I'm clear. Miss Teggelaar, you'll file something today or tomorrow that is going to update the proposed form of order adding the information that we talked about?

MS. TEGGELAAR: Yes.

THE COURT: And I'll enter that immediately, you're saying or do I want until the 90 days?

MS. TEGGELAAR: That -- the order that I would be submitting, you could enter immediately.

THE COURT: And then in 90 days you'll be filing something else that I can convert what I'm entering tomorrow or the next day into a final dismissal with prejudice?

MS. TEGGELAAR: The order that I will submit will have a provision in it stating that it will become final with prejudice after a certain date, and I can count out six months from --

THE COURT: I got it.

MS. TEGGELAAR: -- today.

THE COURT: I'm following you now.

MS. TEGGELAAR: We won't have to go and enter another --

THE COURT: I was a little murky on that. Got it. Okay. Thank you very much. Thank you, sir.

MR. EMANUEL: And again I apologize. I do have a couple of comments once we left the record.

THE COURT: Yeah. Okay. We can go off the record.

(WHICH WERE ALL THE PROCEEDINGS HAD).

CERTIFICATE

I, Sharon Boleck Mroz, being a duly authorized and acting official court reporter for the United States District Court, for the Northern District of Indiana, Hammond Division, do hereby certify that I did report in machine shorthand the foregoing proceedings, and that my shorthand notes so taken at said time and place were reduced to typewriting under my personal direction.

I further certify that the foregoing typewritten transcript constitutes a true record of said proceedings, so ordered to be transcribed.

Sharon Boleck Mroz
Official Court Reporter

# APPENDIX D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

ALTAGRACIA DIAZ, on behalf of herself and all others similarly situated,

Plaintiff,

-against-

RESIDENTIAL CREDIT SOLUTIONS, INC.,

Defendant.

- - - - - - - - - - - - - - - - - X

12 CV 3781

U.S. Courthouse
Central Islip, N.Y.

September 29, 2014
9:30 a.m.

TRANSCRIPT OF FAIRNESS HEARING

BEFORE:

HONORABLE ARTHUR D. SPATT, U.S.D.J.

APPEARANCES:

For the Plaintiff: LAW OFFICES OF KLEINMAN, LLC
626 Rexcorp Plaza
Uniondale, New York 11556
BY: ABRAHAM KLEINMAN, ESQ.

For the Defendant: LOWENSTEIN SANDLER, LLP
1251 Avenue of the Americas
New York, New York
BY: JASON HALPER, ESQ.

Court Reporter: HARRY RAPAPORT, CSR
United States District Court
100 Federal Plaza
Central Islip, New York 11722
(631) 712-6105

Proceedings recorded by mechanical stenography.
Transcript produced by computer-assisted transcription.

THE CLERK: Civil cause for fairness hearing, Diaz against Residential Credit Solutions, Inc.

THE COURT: Please state your appearances.

MR. KLEINMAN: Good morning, your Honor.

Law offices of Kleinman LLC, by Abraham Kleinman, for the plaintiff and the class.

THE COURT: Good morning.

MR. HALPER: Good morning, your Honor.

Jason Halper of Loweinstein Sandler LLP, for the defendant.

THE COURT: I didn't get your name, what is it.

MR. HALPER: Jason Halper, H-A-L-P-E-R.

THE COURT: Mr. Kleinman, you are interested in me approving this settlement, right?

MR. KLEINMAN: We are, your Honor.

THE COURT: Why?

MR. KLEINMAN: Your Honor, this is a case that involved a Fair Debt Collections Practices Act, where the plaintiff complained a violative collection letter.

With the assistance of your Honor we reached a settlement several months ago, and subsequent to that notice was sent out.

Notice was sent, your Honor, to 378 persons. Only 350 of those were effective and reached their destination.

Of those 350 notices that reached their destination, ninety-one persons opted into the class. Eighty-eight of those were timely, your Honor. Three were a bit late. And at this juncture, if your Honor approves the class, we would ask that the Court allows those three that were late to be included in the class.

Should your Honor approve the class and approve all 91 claim forms each member would receive $1,098.90.

THE COURT: $1,098 and 98 cents?

MR. KLEINMAN: 90 cents.

Plaintiff believes it is a terrific result for the class because in an ordinary situation the maximum amount a consumer could receive under the Act would be $1,000.

Here each class member, should the Court approve, would be getting in excess of the statutory amount listed in the Fair Debt Collections Practices Act.

Also at this time, your Honor, we would ask the class representative receive an incentive fee totalling $5,000 for her participation in the class.

THE COURT: That is Ms. Diaz. A male or female?

MR. KLEINMAN: A female, at Altagracia Diaz.

THE COURT: She is going to get 5,000?

MR. KLEINMAN: Should the Court approve.

The reason we ask for the incentive fee is

Ms. Diaz was very involved in the class, and followed the travel of the case, appeared for deposition, appeared for a conference before Magistrate Judge Tomlinson, and has been very effective and has followed the case in toto.

We would also ask, your Honor, that the Court approve the attorney's fees in the amount of $98,330.

THE COURT: That would be in addition to the 100,000?

MR. KLEINMAN: It would, your Honor.

THE COURT: And what is the hourly rate for that?

MR. KLEINMAN: My hourly rate was at $300, and Ms. Hardy in Illinois, if I can have a moment to double check, I believe that was at $325 per hour for Ms. Hardy of the Edelman Combs firm in Illinois.

THE COURT: And what about payments to the paralegal? What rate is being paid?

MR. KLEINMAN: They pay their paralegal between 100 and $125 per hour, your Honor.

THE COURT: Mr. Halper.

MR. HALPER: Good morning, your Honor.

We have no objection to the settlement.

The only thing that I would point out to your Honor is that in the proposed final order for approval of the class settlement that the plaintiff filed on September

24th, in paragraph one it does mention that there were 88 class members who submitted a timely claim firm.

So, if we are going to approve --

THE COURT: Which form are we talking about?

MR. HALPER: I'm sorry, your Honor.

The proposed final order, document 62-4 on the documents, which was filed by the plaintiff on September 24th.

MR. KLEINMAN: If the Court would like, your Honor, I can present a copy.

THE COURT: I don't see it. Can I see a copy?

MR. KLEINMAN: Can I approach?

THE COURT: Yes.

MR. KLEINMAN: Thank you.

(Handed to the Court.)

THE COURT: Just one minute.

I do have a copy. It is Exhibit C, for Charley, right?

MR. KLEINMAN: Yes, your Honor.

THE COURT: Okay.

You can return this.

MR. KLEINMAN: May I approach?

THE COURT: Yes.

So, you mentioned that the final order says 88 class members, when there actually are going to be 91 if I

approve the three late filings?

MR. HALPER: Yes.

THE COURT: I will approve the three late filings, so it will be 91.

MR. HALPER: Yes, your Honor.

We have no objection to that.

The only other thing I will mention, your Honor, in paragraphs 6 and 17 of the proposed final order, it states that the claims that are being released in this case are being dismissed without prejudice. We would just ask the claims be dismissed with prejudice.

I have conferred with Mr. Kleinman about that, and if you look at paragraph 21 --

THE COURT: Any objection to the dismissal with prejudice, Mr. Kleinman?

MR. KLEINMAN: Your Honor, we would be happy to dismiss it with prejudice after a period where an appeal might be filed.

THE COURT: Okay.

MR. HALPER: And that is fine with me.

If we were to do that, I would ask that paragraphs 6 and 17 be clarified.

THE COURT: You will have to amend that.

MR. HALPER: Yes.

THE COURT: Anything else?

MR. HALPER: Not from the defendant, your Honor.

MR. KLEINMAN: If I may, your Honor? I would just like the Court to note that there have been no objections or exclusions, and no one has appeared today.

However, I was informed that a Ms. Francine Moore, who was a claim member, whose claim was title, who the Court has since approved, was planning in attending today. And I do not see her in the Court.

I have a conference before Judge Feuerstein at 11:00 o'clock this morning, and if the Court allows I will stay to address the concerns.

THE COURT: What concerns does she have?

MR. KLEINMAN: She just wanted to see the proceedings, but nonetheless, if I can stay I will address any concerns she may have.

THE COURT: Anything else, counsel?

MR. KLEINMAN: No, your Honor.

THE COURT: This is one of the easiest class actions fairness hearings, I have ever been in. As a matter of fact, it is probably the only one in which there is no objection. And the attorney's fees are fair. That combination we rarely see.

We have a situation where under the statute the damages would be a thousand dollars a person generally with some exceptions, to the Fair Debt Collections

Practices Act violation. And here the claimants are going to receive $1,098.90. So they are a little bit ahead of the game.

I think that, therefore, the $100,000 to be distributed to the 91 class members is fair. Each class member, as I said would get $1,098.90, which is a little more than they would receive under the statute.

The $5,000 to the class representative is also in my opinion fair. She is the one who put the work in.

Also, the attorney's fees of $94,330 at rates of 300 and 325 dollars an hour is also fair.

The paralegal of 100 to 125, that is okay as well.

So that, surprisingly, everything in this agreement is fair. And I'm going to approve it in its entirety.

So, I want you to send me a final approval order with the revisions that counsel for the defendant has raised. And that is paragraph 17 has to be revised.

What is the other revision?

MR. HALPER: It was also paragraph six, your Honor, it was to be without prejudice.

THE COURT: Yes.

MR. HALPER: And I believe --

THE COURT: It is going to be with prejudice.

MR. HALPER: And paragraph 1 references there were 88 participating --

THE COURT: It has to be 91?

MR. HALPER: Yes.

THE COURT: So you will have to make those changes.

Send that to me with notice and I will sign it.

MR. KLEINMAN: Thank you, your Honor.

THE COURT: Okay.

This has been a very easy fairness hearing.

Thank you very much.

MR. KLEINMAN: Thank you, your Honor.

Just for completeness of the record, those members who do not cash their checks, those monies will go to the Legal Aid Society, your Honor.

THE COURT: Thank you.

This fairness hearing is concluded.

MR. HALPER: Thank you, Judge.

(End of proceedings.)

# APPENDIX E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARRIS N.A., Plaintiff, v. ACADIA INVESTMENTS L.C., and LOREN W. HERSHEY, Defendants. | ) | No. 1:09-cv-06661 Hon. Sidney I. Schenkier |

DECLARATION OF DAVID T.B. AUDLEY

I, David T.B. Audley, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1. The undersigned is an attorney for BMO Harris Bank N.A. ("*Harris*") in this case and is authorized to make this Declaration on behalf of Harris in support of Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Fed.R.Civ.P. 54(D) and Local Rule 54.3 (the "*Motion*"). This Declaration is made based upon my personal knowledge of the facts contained herein.

2. I received my law degree from the University of Wisconsin in 1985. I am attorney licensed to practice in the State of Illinois. I am admitted to practice in the United States District Courts for the Northern District of Illinois, Southern District of Indiana, Eastern District of Wisconsin, Western District of Wisconsin and Massachusetts. I am also admitted to practice in the United States Courts of Appeals for the Seventh Circuit and Sixth Circuit.

3. I am a partner in the firm of Chapman and Cutler LLP. I have had primary responsibility for the services rendered in this case on behalf of Harris.

4. My current hourly rate is $745.00. My hourly rates in 2009, 2010 and 2011 were $560, $595 and $650, respectively. The hourly rates for the other attorneys and paralegals at Chapman and Cutler LLP who worked on this case are reflected in the table below.

| Attorney/Paralegal | 2009 Rate | 2010 Rate | 2011 Rate | 2012 Rate |
|---|---|---|---|---|
| Terry McIroy | 610.00 | 650.00 | 710.00 | 775.00 |
| Leo Gagion | N/A | 650.00 | 710.00 | 775.00 |
| Michael Benz | 560.00 | 595.00 | 650.00 | 715.00 |
| Steve Hastings | 560.00 | 595.00 | 650.00 | 715.00 |
| Dan Baker | 495.00 | 520.00 | 570.00 | 655.00 |
| Jim Sullivan | 470.00 | 500.00 | 530.00 | 575.00 |
| Laura Appleby | 285.00 | 335.00 | 390.00 | 455.00 |
| David Standa | 245.00 | 245.00 | 315.00 | 390.00 |
| Kaitlin Corkran | 245.00 | 290.00 | 365.00 | |
| John Giazzon | 200.00 | 210.00 | 225.00 | 235.00 |

5. These are the actual rates which Chapman and Cutler LLP charges and has charged paying clients (including Harris) in other cases for the types of services rendered in this case. These hourly rates fall within, and do not exceed, the prevailing market hourly rates in Chicago (and in the case of Leo Gagion and Kaitlin Corkran, in New York, as reflected by Mr. Gagion's Declaration also submitted with this Motion) for similar services by lawyers and paralegals of reasonably comparable skill, experience and reputation.

6. For services and disbursements incurred in connection with the representation of Harris in this case, Harris has paid or become obligated to pay attorneys' fees and costs to

Chapman and Cutler LLP in the total amount of $613,777.25, comprised of $19,747.00 in fees and $14.88 in costs as reflected on the detailed billing records and time entries attached as Exhibits 9, 10 and 11 to the Motion, $499,192.00 in fees and $72,047.83 in costs as reflected on the detailed billing records and time entries attached as Exhibits 12, 13 and 14 to the Motion, and $22,299.50 in fees and $476.04 in costs for Harris' local Virginia counsel as reflected on the detailed billing records and time entries as attached as Exhibits 15, 16 and 17 to the Motion.

7. The amount of fees requested in the Motion, and the hours expended by Chapman and Cutler LLP in its representation of Harris in this case, are reasonable. The referenced Exhibits to the Motion relate to discrete categories of fees and costs incurred by Harris as a result of Acadia's default under the Credit Agreement, and thereafter the enforcement of Harris' rights under the Credit Agreement, $15.5 Million Note and Hershey's $15.5 Million Guaranty, including post-default/pre-litigation efforts to resolve matters and thereafter the litigation itself, as well as post-judgment collection activities occurring in Chicago, Illinois, Fairfax County, Virginia, and New York City.

8. Specifically, the Chapman fees and costs identified at paragraph 11 of the Motion as "Matter No. 1679539," totaling $19,747.00 in fees, and $14.88 in costs, were incurred as a result of default under the Credit Agreement starting in February 2009, which resulted in, *inter alia*, the negotiation, drafting and execution of the Forbearance and Second Amendment between Harris, Acadia and Hershey, and before any litigation ensued in the Fall of 2009. The separate Chapman fees and costs identified at paragraph 11 of the Motion as "Matter No. 1966589", totaling $499,192.00 in fees, and $72,047.83 in costs, were incurred by Harris from August 2009 through February 1, 2012, and relate to activity after default occurred under the Forbearance and Second Amendment, which necessitated the issuance of a formal demand for payment and the subsequent litigation phase of the matter, including all post-judgment collection efforts. Those

post-judgment collection efforts, alone, include: (i) the utilization of a partner in Chapman's New York City Office, Leo Gagion, relating to domestication of the Judgment and enforcement efforts seeking to obtain over $1.5 million in distributions otherwise payable to Hershey, currently being held by a private equity fund, DLJ Private Equity Partners Fund II, L.P. (the *"DLJ Fund"*), which has now been the subject of objections filed by Hershey and his New York lawyers, as well as (ii) the utilization of a Virginia firm, McGuireWoods, to domesticate the Judgment in Fairfax County, Virginia (where Hershey resides), and thereafter to conduct post-judgment citation examinations of Hershey and other collection efforts.

9. Detailed reports of the fees and costs incurred (redacted as necessary to protect attorney client privilege) are attached hereto as Exhibits 9 through 17, as referenced in the tables above. These reports provide the name of the attorney or paralegal providing the services, a description of the services provided, the date(s) the services were provided, the amount of time expended for such services, and the charge for such services based upon the normal and customary hourly rate charged by each service provider. Costs are also broken down in these reports by the date incurred, line item description, and the amount(s) charged for each expense.

10. As to my direct participation in this credit and the litigation itself, in the Fall of 2009 default occurred under the Forbearance and Second Amendment, which was not cured by Acadia, necessitating pre-filing loan document reviews, meetings with Harris, and the preparation and issuance of default and demand notices, all as reflected in the detailed billing and time entries attached as Exhibit 12.

11. After multiple fruitless negotiations with Hershey were attempted to reach a non-litigation resolution, the lawsuit was prepared and filed in October, 2009, and thereafter prosecuted through summary judgment, which was opposed by Acadia and Hershey throughout, on multiple grounds.

12. Discovery was initiated by Acadia and Hershey, including document production and the depositions of multiple Harris employees. In addition, during the litigation, Harris sought to enforce its rights under the loan documents in seeking to obtain payment from the various private equity funds in which Acadia held an interest, and which had been pledged to Harris as collateral. These private equity funds, in turn, initiated extensive communications with Harris as to Acadia's capital call defaults thereunder, with multiple and lengthy discussions occurring with these private equity funds to try and accomplish a sale of these funds, which necessitated Acadia and Hershey's consent, but which was never obtained.

13. Continual subsequent attempts at settlement were also made by Harris to try and avoid further litigation costs. Settlement, however, could not be reached, requiring the preparation and filing of the summary judgment motion, statements and counter statements of material fact, and legal memoranda submitted by all of the parties. After summary judgment was granted, Hershey would not initially agree to resolve matters, including a relatively small interest rate issue that required extensive negotiations with counsel to Acadia and Hershey, ultimately resulting in a resolution of the issue per stipulation (but which Hershey subsequently, but unsuccessfully, attempted to withdraw from).

14. After the Judgment was entered, post-judgment collection activities were then initiated in this Court via the issuance of multiple third party citations, as well as the registration of the Judgment in Fairfax County, Virginia, and New York state court located in New York City. The Declarations of Leo Gagion of Chapman's New York office (Exhibit 3 the Motion), and Doug Foley of McGuireWoods' Norfolk, Virginia office (Exhibit 4 the Motion), describe these post-judgment activities.

15. In addition, Chapman has represented Harris in Hershey's efforts before this Court to enjoin or stay enforcement of the Judgment, Hershey's subsequent motion to quash third party

citations issued by the clerk of this Court, as well as Hershey's appellate efforts in the Seventh Circuit, including settlement conferences before the Seventh Circuit settlement panel. Chapman has also represented Harris against Hershey's more recent attempts to utilize the Acadia bankruptcy to enjoin further collection efforts by Harris.

16. All of these efforts are as set forth in the detailed billing and time entries attached to the Motion as Exhibits 12, 13 and 14.

David T.B. Audley

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARRIS N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-06661 |
| | ) | |
| ACADIA INVESTMENTS L.C., and LOREN W. HERSHEY, | ) | Hon. Sidney I. Schenkier |
| | ) | |
| | ) | |
| Defendants. | ) | |

DECLARATION OF DANIEL W. BAKER

I, Daniel W. Baker, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1. The undersigned is an attorney for BMO Harris Bank N.A. ("*Harris*") in this case and is authorized to make this Declaration on behalf of Harris in support of Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Fed.R.Civ.P. 54(D) and Local Rule 54.3 (the "*Motion*"). This Declaration is made based upon my personal knowledge of the facts contained herein.

2. I received my law degree from the University of Chicago in 1995. I am an attorney licensed to practice in the State of Illinois.

3. I am a partner in the firm of Chapman and Cutler LLP. I had primary responsibility for the services rendered in this case on behalf of Harris prior to the matter being transferred to our litigation department, where David Audley, a partner in our litigation group, assumed primary responsibility.

4. My hourly rates in 2009, 2010 and 2011 were $495, $520 and $570, respectively.

5. These are the actual rates which Chapman and Cutler LLP charges and has charged paying clients (including Harris) in other cases for the types of services I rendered to Harris in

this matter. These hourly rates fall within, and do not exceed, the prevailing market hourly rates in Chicago, Illinois for similar services by lawyers and paralegals of reasonably comparable skill, experience and reputation.

6. For services and disbursements incurred in connection with my representation of Harris in this case, Harris has paid or become obligated to pay attorneys' fees and costs to Chapman and Cutler LLP in the total amount of $19,761.85. This figure is comprised of $19,747.00 in fees and $14.88 in costs and expenses.

7. Detailed reports of these fees and expenses incurred to date are attached to the Motion as Exhibits 9, 10 and 11.

8. The amount of fees requested in the Motion, and the hours expended by myself and others under my supervision at Chapman and Cutler LLP in its representation of Harris in this matter, are reasonable. I was the principal attorney representing Harris in the preparation of the notice of acceleration, as well as the negotiation, preparation and execution of the Forbearance Agreement and Second Amendment to Credit Agreement (*"Forbearance and Second Amendment"*), after default occurred under the Credit Agreement, as well as other matters incident to the credit, including conferences with Harris and the review of letters to private equity funds, all of which are described in the time entries attached to the Motion as Exhibits 9, 10 and 11.

Daniel W. Baker

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARRIS N.A., Plaintiff, | ) | |
| v. | ) | No. 1:09-cv-06661 |
| ACADIA INVESTMENTS L.C., and LOREN W. HERSHEY, Defendants. | ) | Hon. Sidney I. Schenkier |

DECLARATION OF LEO V. GAGION

I, Leo V. Gagion, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1. The undersigned is an attorney for BMO Harris Bank N.A. ("*Harris*") in this case and is authorized to make this Declaration on behalf of Harris in support of Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Fed.R.Civ.P. 54(D) and Local Rule 54.3 (the "*Motion*"). This Declaration is made based upon my personal knowledge of the facts contained herein.

2. I received my law degree from the Fordham University School of Law in 1984. I am an attorney licensed to practice in the State of New York. I am admitted to practice in the United States District Courts for the Eastern District of New York, Southern District of New York and Northern District of New York. I am also admitted to practice in the United States Courts of Appeals for the Federal Circuit, Second Circuit and Tenth Circuit.

3. I am a partner in the General Litigation Department of Chapman and Cutler LLP, headquartered in Chapman's New York City office. I have had primary responsibility for the post-judgment collection legal services rendered in this case on behalf of Harris in New York State Supreme Court, New York County.

4. My current hourly rate is $775.00. My hourly rate in 2011 was $710.00.

5. These are the actual rates which Chapman and Cutler LLP charges and has charged paying clients (including Harris) in other cases for the types of services rendered in this case. These hourly rates fall within, and do not exceed, the prevailing market hourly rates in New York City for similar services by lawyers and paralegals of reasonably comparable skill, experience and reputation.

6. For the 168 total hours for legal services and disbursements incurred from September 9, 2011 to February 1, 2012 in connection with my representation of Harris in this case to prosecute post-judgment collection activities in New York state court, Harris has paid or become obligated to pay attorneys' fees and costs to Chapman and Cutler LLP in the total amount of $123,245.00.

7. Detailed reports of these fees and expenses incurred to date for my representation of Harris in this matter are attached to the Motion as part of Exhibits 12 (one entry on September 7, 2011) and Exhibits 13 and 14.

8. The amount of fees requested in the Motion, and the hours expended by myself on behalf of Harris in this matter, are reasonable. From September 9, 2011 to February 1, 2012, I have devoted my time and attention to a number of different matters in connection with enforcing the Judgment obtained in this Court. Specifically, I devoted time and attention to the registration of the Judgment in this case with the New York State Supreme Court in New York County under Article 54 of the NY CPLR. My work included researching the process for such registration both in New York federal and state court, and the preparation of the judgment documents for filing with the New York State Supreme Court, including the preparation of a substantive affidavit supporting the filing of the Judgment. In addition, I devoted substantial time to commencing and prosecuting the matter of *BMO Harris Bank N.A. v. DLJ Private Equity*

*Partners Fund II*, Index No. 112067/2011 (N.Y. State Supreme, N.Y. Co.), a turnover action, pursuant to NY CPLR 5225(b) & 5227, that Harris commenced in October 2011, for the purpose of securing approximately $1.5 million in distributions that the DLJ Private Equity Fund owes to Loren W. Hershey, the Judgment Debtor in this matter, but had not yet paid to him. My work on this matter was extensive and included researching and drafting the Verified Petition, negotiating with the DLJ Private Equity Fund over the terms of the turnover, preparation of a proposed judgment for the turnover proceeding, and defense of an extensive motion of the Judgment Debtor, brought by Order to Show Cause, to intervene and vacate the New York Court's Order granting the Verified Petition. The defense of the Judgment Debtor's Motion consisted of substantial briefing of the issues to the Court (including an extensive Memorandum of Law and two substantive Affidavits) and preparation for and attending the hearing on the motion held on January 25, 2012.

Leo V. Gagion

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BMO HARRIS N.A., Plaintiff, v. ACADIA INVESTMENTS L.C., and LOREN W. HERSHEY, Defendants. | ) | No. 1:09-cv-06661 Hon. Sidney I. Schenkier |

DECLARATION OF DOUGLAS M. FOLEY

I, Douglas M. Foley, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1. The undersigned is an attorney for BMO Harris Bank N.A. ("*Harris*") in this case and is authorized to make this Declaration on behalf of Harris in support of Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Fed.R.Civ.P. 54(D) and Local Rule 54.3 (the "*Motion*"). This Declaration is made based upon my personal knowledge of the facts contained herein.

2. I received my law degree from the George Mason University School of Law in 1992. I am an attorney licensed to practice in the Commonwealth of Virginia in all state and federal courts. I am admitted to practice in the State of North Carolina, the State of New York and the District of Columbia. I am also admitted to practice in the United States Courts of Appeals for the Fourth Circuit.

3. I am a partner in the firm of McGuireWoods LLP. I have had primary responsibility for the services rendered in this case on behalf of Harris.

4. My current hourly rate is $700.00. My hourly rate in 2011 was $650.00. The hourly rates for the other attorneys and paralegals at McGuireWoods LLP who worked on this case are reflected in the table below.

| Attorney/Paralegal | 2011 Rate | 2012 Rate |
|---|---|---|
| Cullen Ann Drescher | $350.00 | n/a |
| Connie Ferrell | $260.00 | $270.00 |
| Linda J. Neilson | $220.00 | $240.00 |
| Kenneth M. Misken | $450.00 | n/a |
| Erin Q. Ashcroft | $365.00 | $400.00 |

5. These are the actual rates which McGuireWoods LLP charges and has charged paying clients (including Harris) in other cases for the types of services rendered in this case. These hourly rates fall within, and do not exceed, the prevailing market hourly rates in Virginia for similar services by lawyers and paralegals of reasonably comparable skill, experience and reputation.

6. For services and disbursements incurred in connection with the representation of Harris in this case Harris has paid or become obligated to pay attorneys' fees and costs to McGuireWoods LLP in the total amount of $22,775.54. This figure is comprised of $22,299.50 in fees and $476.04 in costs and expenses.

7. Detailed reports of the fees and expenses incurred to date is attached to the Motion as Exhibits 15, 16 and 17).

8. The amount of fees requested in the Motion, and the hours expended by McGuireWoods LLP in its representation of Harris in this case, are reasonable.

Douglas M. Foley

\37415755.1

# APPENDIX F

# USAO ATTORNEY'S FEES MATRIX – 2015 – 2017

*Revised Methodology starting with 2015-2016 Year*

Years (Hourly Rate for June 1 – May 31, based on change in PPI-OL since January 2011)

| Experience | 2015-16 | 2016-17 |
|---|---|---|
| 31+ years | 568 | 581 |
| 21-30 years | 530 | 543 |
| 16-20 years | 504 | 516 |
| 11-15 years | 455 | 465 |
| 8-10 years | 386 | 395 |
| 6-7 years | 332 | 339 |
| 4-5 years | 325 | 332 |
| 2-3 years | 315 | 322 |
| Less than 2 years | 284 | 291 |
| Paralegals & Law Clerks | 154 | 157 |

*Explanatory Notes*

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia (USAO) to evaluate requests for attorney's fees in civil cases in District of Columbia courts. The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b) (Equal Access to Justice Act). The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, or by other Department of Justice components, or in other kinds of cases. The matrix does **not** apply to cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

2. A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases. *See, e.g., Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Consistent with that definition, the hourly rates in the above matrix were calculated from average hourly rates reported in 2011 survey data for the D.C. metropolitan area, which rates were adjusted for inflation with the Producer Price Index-Office of Lawyers (PPI-OL) index. The survey data comes from ALM Legal Intelligence's 2010 & 2011 Survey of Law Firm Economics. The PPI-OL index is available at http://www.bls.gov/ppi. On that page, under "PPI Databases," and "Industry Data (Producer Price Index - PPI)," select either "one screen" or "multi-screen" and in the resulting window use "industry code" 541110 for "Offices of Lawyers" and "product code" 541110541110 for "Offices of Lawyers." The average hourly rates from the 2011 survey data are multiplied by the PPI-OL index for May in the year of the update, divided by 176.6, which is the PPI-OL index for January 2011, the month of the survey data, and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

3. The PPI-OL index has been adopted as the inflator for hourly rates because it better reflects the mix of legal services that law firms collectively offer, as opposed to the legal services that typical consumers use, which is what the CPI-

Legal Services index measures. Although it is a national index, and not a local one, *cf. Eley v. District of Columbia*, 793 F.3d 97, 102 (D.C. Cir. 2015) (noting criticism of national inflation index), the PPI-OL index has historically been generous relative to other possibly applicable inflation indexes, and so its use should minimize disputes about whether the inflator is sufficient.

4. The methodology used to compute the rates in this matrix replaces that used prior to 2015, which started with the matrix of hourly rates developed in *Laffey v. Northwest Airlines, Inc.* 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), and then adjusted those rates based on the Consumer Price Index for All Urban Consumers (CPI-U) for the Washington-Baltimore (DC-MD-VA-WV) area. Because the USAO rates for the years 2014-15 and earlier have been generally accepted as reasonable by courts in the District of Columbia, see note 9 below, the USAO rates for those years will remain the same as previously published on the USAO's public website. That is, the USAO rates for years prior to and including 2014-15 remain based on the prior methodology, *i.e.*, the original *Laffey* Matrix updated by the CPI-U for the Washington-Baltimore area. *See Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, --- F. Supp. 3d ---, 2015 WL 6529371 (D.D.C. 2015) and Declaration of Dr. Laura A. Malowane filed therein on Sept. 22, 2015 (Civ. Action No. 12-1491, ECF No. 46-1) (confirming that the USAO rates for 2014-15 computed using prior methodology are reasonable).

5. Although the USAO will not issue recalculated *Laffey* Matrices for past years using the new methodology, it will not oppose the use of that methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods prior to June 2015, provided that methodology is used consistently to calculate the entire fee amount. Similarly, although the USAO will no longer issue an updated *Laffey* Matrix computed using the prior methodology, it will not oppose the use of the prior methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods after May 2015, provided that methodology is used consistently to calculate the entire fee amount.

6. The various "brackets" in the column headed "Experience" refer to the attorney's years of experience practicing law. Normally, an attorney's experience will be calculated starting from the attorney's graduation from law school. Thus, the "Less than 2 years" bracket is generally applicable to attorneys in their first and second years after graduation from law school, and the "2-3 years" bracket generally becomes applicable on the second anniversary of the attorney's graduation (*i.e.*, at the beginning of the third year following law school). *See Laffey*, 572 F. Supp. at 371. An adjustment may be necessary, however, if the attorney's admission to the bar was significantly delayed or the attorney did not otherwise follow a typical career progression. *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate); *EPIC v. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 60-61 (D.D.C. 2013) (same). The various experience levels were selected by relying on the levels in the ALM Legal Intelligence 2011 survey data. Although finer gradations in experience level might yield different estimates of market rates, it is important to have statistically sufficient sample sizes for each experience level. The experience categories in the current USAO Matrix are based on statistically significant sample sizes for each experience level.

7. ALM Legal Intelligence's 2011 survey data does not include rates for paralegals and law clerks. Unless and until reliable survey data about actual paralegal/law clerk rates in the D.C. metropolitan area become available, the USAO will compute the hourly rate for Paralegals & Law Clerks using the most recent historical rate from the USAO's former *Laffey* Matrix (*i.e.*, $150 for 2014-15) updated with the PPI-OL index. The formula is $150 multiplied by the PPI-OL index for May in the year of the update, divided by 194.3 (the PPI-OL index for May 2014), and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

8. The USAO anticipates periodically revising the above matrix if more recent reliable survey data becomes available, especially data specific to the D.C. market, and in the interim years updating the most recent survey data with the PPI-OL index, or a comparable index for the District of Columbia if such a locality-specific index becomes available.

9. Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the USAO as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n.14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Most lower federal courts in the District of Columbia

have relied on the USAO Matrix, rather than the so-called "*Salazar* Matrix" (also known as the "LSI Matrix" or the "Enhanced *Laffey* Matrix"), as the "benchmark for reasonable fees" in this jurisdiction. *Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) (quoting *Pleasants v. Ridge*, 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006)); *see, e.g., Joaquin v. Friendship Pub. Charter Sch.*, --- F. Supp. 3d ---, 2016 WL 3034151 (D.D.C. 2016); *Prunty v. Vivendi*, --- F. Supp. 3d ---, 2016 WL 3659889 (D.D.C. 2016); *CREW v. U.S. Dep't of Justice*, --- F. Supp. 3d ---, 2015 WL 6529371 (D.D.C. 2015); *McAllister v. District of Columbia*, 21 F. Supp. 3d 94 (D.D.C. 2014); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 15 (D.D.C. 2013); *Berke v. Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013); *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 154-55 (D.D.C. 2012); *Sykes v. District of Columbia*, 870 F. Supp. 2d 86, 93-96 (D.D.C. 2012); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 40-49 (D.D.C. 2011); *Hayes v. D.C. Public Schools*, 815 F. Supp. 2d 134, 142-43 (D.D.C. 2011); *Queen Anne's Conservation Ass'n v. Dep't of State*, 800 F. Supp. 2d 195, 200-01 (D.D.C. 2011); *Woodland v. Viacom, Inc.*, 255 F.R.D. 278, 279-80 (D.D.C. 2008); *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148-50 (D.D.C. 2007). *But see, e.g., Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 13-15 (D.D.C. 2000). The USAO contends that the *Salazar* Matrix is fundamentally flawed, does not use the *Salazar* Matrix to determine whether fee awards under fee-shifting statutes are reasonable, and will not consent to pay hourly rates calculated with the methodology on which that matrix is based.

# APPENDIX G

Edelman, Combs, Latturner & Goodwin LLC
20 S. Clark Street
Suite 1500
Chicago, IL 60603-3403

,

Date: 2/13/2019

Regarding: FIRSTSOURCE ADVANTAGE, LLC V NAVARROLLI, NIC
Invoice No: 00091

***Services Rendered***

| Date | Staff | Description | Hours | Rate | Charges |
|---|---|---|---|---|---|
| 7/17/2017 | DAE | work on complaint | 1.00 | $700.00 | $700.00 |
| 7/18/2017 | DAE | work on class papers | 1.00 | $700.00 | $700.00 |
| 7/19/2017 | AL | Prepared appearances and civil cover sheet | 0.30 | $125.00 | $37.50 |
| 7/19/2017 | AL | Prepared summons | 0.20 | $125.00 | $25.00 |
| 7/19/2017 | AL | Forwarded emial to PNJ from client | 0.10 | $125.00 | $12.50 |
| 7/19/2017 | AL | Organized docs sent initial docs to client for approval | 0.30 | $125.00 | $37.50 |
| 7/19/2017 | JOL | work on complaint | 0.40 | $700.00 | $280.00 |
| 7/19/2017 | PNJ | Conf with JOL reviewing the complaint. | 0.20 | $230.00 | $46.00 |
| 7/19/2017 | PNJ | Email reply to CL regarding complaint. | 0.10 | $230.00 | $23.00 |
| 7/19/2017 | PNJ | Review and CONF with DAE and JOL regarding complaint. | 0.30 | $230.00 | $69.00 |
| 7/19/2017 | PNJ | Email response to CL. | 0.10 | $230.00 | $23.00 |
| 7/20/2017 | FRG | conf. PNJ re: nature of the case; getting the case filed | 0.40 | $500.00 | $200.00 |
| 7/20/2017 | PNJ | CONF with FRG and JOL to review case file before filing | 0.20 | $230.00 | $46.00 |
| 7/20/2017 | PNJ | Edited complaint. Asked RU to send final version to CL for his review and set | 0.60 | $230.00 | $138.00 |

| | | up a call with FRG and myself. | | | |
|---|---|---|---|---|---|
| 7/21/2017 | FRG | tc client re: approval of the complaint | 1.00 | $500.00 | $500.00 |
| 7/21/2017 | PNJ | PC with FRG to CL to get approval for class complaint | 0.70 | $230.00 | $161.00 |
| 7/21/2017 | PNJ | CONF with FRG to to discuss phone call with CL and Westlaw docket search | 0.20 | $230.00 | $46.00 |
| 7/25/2017 | RU | Docket Complaint Dates | 0.30 | $125.00 | $37.50 |
| 7/25/2017 | RU | Organize Files to Create Binder | 0.50 | $125.00 | $62.50 |
| 7/25/2017 | RU | Sent Summons to Clerk, Via E-mail.Save documents filed on 7/21/17 to TM, Print and Prepare CC for Judge | 0.80 | $125.00 | $100.00 |
| 8/11/2017 | FRG | tc Manny Newburger re: settlement | 0.30 | $500.00 | $150.00 |
| 9/25/2017 | RU | Investigating Docket Dates | 0.10 | $125.00 | $12.50 |
| 10/19/2017 | FRG | reviewed status of case; e-mailed Manny Newberger re: scheduling Rule 26f conference | 0.20 | $500.00 | $100.00 |
| 10/23/2017 | FRG | e-mailed Manny Newburger re: scheduling Rule 26(f) conference | 0.10 | $500.00 | $50.00 |
| 10/24/2017 | FRG | Rule 26 conf with Manny Newburger | 0.60 | $500.00 | $300.00 |
| 10/24/2017 | PNJ | PC with FRG from OC. | 0.40 | $230.00 | $92.00 |
| 11/13/2017 | FRG | conf. DAE, CMC re: claim for actual damages | 0.30 | $500.00 | $150.00 |
| 11/14/2017 | FRG | tc Manny Newburger (l/m) re: settlement | 0.20 | $500.00 | $100.00 |
| 11/16/2017 | FRG | lt Manny Newburger re: settlement | 0.20 | $500.00 | $100.00 |
| 11/22/2017 | FRG | began working on a settlement demand; e-mailed Manny Newburger for additional information related to the classes | 0.40 | $500.00 | $200.00 |
| 11/30/2017 | IL | draft from model Rule 26 (a) 1 Disclosures | 0.20 | $125.00 | $25.00 |

| | | | | | |
|---|---|---|---|---|---|
| 11/30/2017 | IL | Worked on Discovery draft | 0.20 | $125.00 | $25.00 |
| 12/01/2017 | IL | Draft Plaintiff's Discovery Requests for Lvnv, Resurgent, Alegis, and Fristsource | 1.30 | $125.00 | $162.50 |
| 12/03/2017 | FRG | Worked on Rule 26a1 disclosures | 0.10 | $500.00 | $50.00 |
| 12/04/2017 | FRG | conf. DAE re: completing Rule 26a1 disclosures | 0.20 | $500.00 | $100.00 |
| 12/04/2017 | PNJ | drafted Rule 26a1 | 2.40 | $230.00 | $552.00 |
| 12/04/2017 | PNJ | CONF with FRG. | 0.30 | $230.00 | $69.00 |
| 12/05/2017 | PNJ | Drafted Rule 26(a)(1) Disclosures | 2.10 | $230.00 | $483.00 |
| 12/05/2017 | PNJ | CONF with FRG. | 0.10 | $230.00 | $23.00 |
| 12/05/2017 | PNJ | Edited Rule 26(a)(1)s. | 0.40 | $230.00 | $92.00 |
| 12/06/2017 | FRG | reviewed, edited draft Rule 26a1 disclosures | 0.30 | $500.00 | $150.00 |
| 12/06/2017 | FRG | tc Manny Newburger re: Judge Cox's order; settlement | 0.10 | $500.00 | $50.00 |
| 12/06/2017 | PNJ | CONF with FRG to discuss changes to Rule 26(a)(1) disclosures. | 0.10 | $230.00 | $23.00 |
| 12/06/2017 | PNJ | Edited Rule 26(a)(1)s. | 0.80 | $230.00 | $184.00 |
| 12/07/2017 | PNJ | Drafted joint report. | 1.60 | $230.00 | $368.00 |
| 12/08/2017 | FRG | conf PNJ re: Joint Status Report for Judge Cox | 0.10 | $500.00 | $50.00 |
| 12/08/2017 | FRG | reviewed, edited draft initial status report | 0.40 | $500.00 | $200.00 |
| 12/08/2017 | IL | docket memo per email | 0.10 | $125.00 | $12.50 |
| 12/08/2017 | PNJ | CONF with FRG. | 0.10 | $230.00 | $23.00 |
| 12/08/2017 | PNJ | Re-drafted joint status report. | 3.00 | $230.00 | $690.00 |
| 12/08/2017 | PNJ | CONF with FRG. | 0.20 | $230.00 | $46.00 |
| 12/08/2017 | PNJ | Edited joint report. | 0.50 | $230.00 | $115.00 |

| | | | | | |
|---|---|---|---|---|---|
| 12/08/2017 | PNJ | Email to OC. | 0.10 | $230.00 | $23.00 |
| 12/08/2017 | PNJ | Finished drafting joint report. | 1.30 | $230.00 | $299.00 |
| 12/11/2017 | DP | Make edits to Plaintiff's Rule 26(a)(1) Disclosures | 0.20 | $125.00 | $25.00 |
| 12/11/2017 | DP | email OC Plaintiff's 26(a)(1) disclosures | 0.10 | $125.00 | $12.50 |
| 12/11/2017 | FRG | reviewed, edited Rule 26(a)(1) disclosures | 0.10 | $500.00 | $50.00 |
| 12/13/2017 | FRG | reviewed Manny Newburger's revisions to the joint status report; made additional edits; e-mailed Newburger re: same | 0.30 | $500.00 | $150.00 |
| 12/14/2017 | RU | Sent CC to Judge Cox | 0.10 | $125.00 | $12.50 |
| 12/15/2017 | FRG | reviewed letter from Manny Newburger re: settlement | 0.10 | $500.00 | $50.00 |
| 12/15/2017 | IL | saved OC email to TM | 0.10 | $125.00 | $12.50 |
| 12/15/2017 | IL | saved D's Rule 26 a1 Disclsoures to Tm | 0.10 | $125.00 | $12.50 |
| 12/15/2017 | IL | logged D’s Rule 26(a)(1) Disclosures | 0.10 | $125.00 | $12.50 |
| 12/15/2017 | IL | logged Letter/Email from OC Barron & Newburger | 0.10 | $125.00 | $12.50 |
| 12/15/2017 | IL | printed status report and placed on FRG chair | 0.20 | $125.00 | $25.00 |
| 12/15/2017 | IL | listedn to VM from FRG and email back | 0.30 | $125.00 | $37.50 |
| 12/18/2017 | FRG | court: initial status hearing before Judge Cox | 0.50 | $500.00 | $250.00 |
| 12/18/2017 | FRG | reviewed, edited Consent to Magistrate Form; e-mailed Manny Newburger re: same | 0.20 | $500.00 | $100.00 |
| 12/18/2017 | FRG | conf. Manny Newburger re: settlement | 1.00 | $500.00 | $500.00 |
| 12/18/2017 | PNJ | Attended court status hearing. | 0.90 | $230.00 | $207.00 |
| 12/18/2017 | PNJ | CONF with FRG. | 0.10 | $230.00 | $23.00 |

| | | | | | |
|---|---|---|---|---|---|
| 12/18/2017 | PNJ | Magistrate Consent form. | 0.20 | $230.00 | $46.00 |
| 12/19/2017 | FRG | reviewed Credit One Bank Arbitration Clause; e-mailed Manny Newburger re: same | 0.20 | $500.00 | $100.00 |
| 12/19/2017 | PNJ | Review magistrate consent form before filing. | 0.10 | $230.00 | $23.00 |
| 12/19/2017 | PNJ | Reviewed email from court. Docket. | 0.10 | $230.00 | $23.00 |
| 1/03/2018 | FRG | e-mailed Manny Newburger re: class issues | 0.10 | $500.00 | $50.00 |
| 1/16/2018 | FRG | tc Corinne Heggie re: status hearing on 1/17/18 | 0.10 | $500.00 | $50.00 |
| 1/17/2018 | FRG | court: status hearing; CASR | 0.80 | $500.00 | $400.00 |
| 1/18/2018 | JE | logged | 0.10 | $125.00 | $12.50 |
| 1/19/2018 | IL | logging MINUTE Court Entry | 0.10 | $125.00 | $12.50 |
| 1/26/2018 | PNJ | Read email from CL. | 0.10 | $230.00 | $23.00 |
| 1/26/2018 | PNJ | Read email from DAE. | 0.10 | $230.00 | $23.00 |
| 1/26/2018 | PNJ | CONF with JS. | 0.10 | $230.00 | $23.00 |
| 2/05/2018 | HAK | Conf DAE re call with client | 0.10 | $500.00 | $50.00 |
| 2/14/2018 | FRG | tc Manny Newburger re: settlement | 0.20 | $500.00 | $100.00 |
| 2/16/2018 | FRG | tc Manny Newburger re: settlement; circulated Defendants' settlement offer; e-mailed Manny Newburger re:same; conf. PNJ re: status hearing on 2/20 | 0.70 | $500.00 | $350.00 |
| 2/16/2018 | PNJ | Read email from FRG. | 0.10 | $230.00 | $23.00 |
| 2/16/2018 | PNJ | CONF with FRG. | 0.20 | $230.00 | $46.00 |
| 2/20/2018 | PNJ | Prep for court. | 0.20 | $230.00 | $46.00 |
| 2/20/2018 | PNJ | Attended court status hearing. | 1.10 | $230.00 | $253.00 |
| 2/20/2018 | PNJ | Drafted CASR. | 0.10 | $230.00 | $23.00 |
| 2/26/2018 | IL | logged MINUTE Court Entry | 0.10 | $125.00 | $12.50 |

| | | | | | |
|---|---|---|---|---|---|
| 3/05/2018 | FRG | tc Manny Newburger re: settlement | 0.20 | $500.00 | $100.00 |
| 3/06/2018 | FRG | reviewed Credit One Bank arb clause; conf. DAE re: same | 0.20 | $500.00 | $100.00 |
| 3/08/2018 | PNJ | Transfer memo. | 0.30 | $230.00 | $69.00 |
| 3/14/2018 | FRG | exchanged e-mails with Manny Newburger re: settlement; began reviewing arb provision | 0.30 | $500.00 | $150.00 |
| 3/15/2018 | FRG | exchanged e-mails with Manny Newburger re: settlement; reviewed arb clauses in four different credit card agreements; drafted settlement demand; conf. DAE, CMC re: same; sent settlement demand to Manny Newburger; tc Manny Newburger re: same; e-mailed Nicholas Navarroli re: same | 1.70 | $500.00 | $850.00 |
| 3/15/2018 | PNJ | Drafted motion to withdraw PNJ appearance. | 0.20 | $230.00 | $46.00 |
| 3/15/2018 | PNJ | PC to CL to get authority for settlement agreement. | 0.10 | $230.00 | $23.00 |
| 3/15/2018 | PNJ | CONF with FRG. | 0.10 | $230.00 | $23.00 |
| 3/15/2018 | PNJ | Email to CL and FRG. | 0.10 | $230.00 | $23.00 |
| 3/19/2018 | IL | filed Mtn to withdraw PNJ | 0.20 | $125.00 | $25.00 |
| 3/20/2018 | CJV | email conf IL re mot to transfer | 0.10 | $230.00 | $23.00 |
| 3/20/2018 | FRG | reviewed, edited motion to transfer Siddiqi | 0.10 | $500.00 | $50.00 |
| 3/20/2018 | IL | courtesy copies preped | 0.20 | $125.00 | $25.00 |
| 3/20/2018 | IL | filled appearances for CJV and CPM | 0.50 | $125.00 | $62.50 |
| 3/20/2018 | IL | filed Mtn to transfer/reasign, drafted notice of motion and filed | 0.90 | $125.00 | $112.50 |
| 3/22/2018 | FRG | reviewed Siddiqi deposition transcript | 0.50 | $500.00 | $250.00 |
| 3/23/2018 | FRG | tc client re: settlement | 0.20 | $500.00 | $100.00 |

| | | | | | |
|---|---|---|---|---|---|
| 4/02/2018 | FRG | memo to CMC re: review of settlement documents | 0.20 | $500.00 | $100.00 |
| 4/02/2018 | IL | printed and saved to tm prelim/settlement documents | 0.40 | $125.00 | $50.00 |
| 4/03/2018 | CMC | work on sett agree | 0.50 | $700.00 | $350.00 |
| 4/03/2018 | IL | logged Motion by Shabih Siddiqi to Reassign Related Case | 0.10 | $125.00 | $12.50 |
| 4/05/2018 | IL | logged Notice of Motion by Shabih Siddiqi to Reassign Related Case | 0.10 | $125.00 | $12.50 |
| 4/09/2018 | IL | added Corinne Heggie to actors | 0.10 | $125.00 | $12.50 |
| 4/10/2018 | IL | logged MINUTE entry of 3-28-18 | 0.10 | $125.00 | $12.50 |
| 4/10/2018 | IL | logged MINUTE entry | 0.10 | $125.00 | $12.50 |
| 4/12/2018 | IL | logged Order of the Executive Committee: Finding of Relatedness Pursuant to Local Rule 40.4 | 0.10 | $125.00 | $12.50 |
| 4/18/2018 | IL | logged MINUTE entry | 0.10 | $125.00 | $12.50 |
| 4/20/2018 | IL | logged Notification of Atty address or Name Change | 0.10 | $125.00 | $12.50 |
| 4/24/2018 | FRG | reviewed draft settlement agreement | 0.20 | $500.00 | $100.00 |
| 4/25/2018 | FRG | reviewed draft settlement agreement | 0.30 | $500.00 | $150.00 |
| 4/25/2018 | FRG | reviewed, edited draft settlement agreement | 0.10 | $500.00 | $50.00 |
| 5/06/2018 | FRG | reviewed, edited draft settlement agreement; e-mailed redline changes to DAE; Manny Newberger | 2.10 | $500.00 | $1,050.00 |
| 5/14/2018 | FRG | reviewed Manny's comments on the settlement agreement; e-mailed Manny re: same | 0.80 | $500.00 | $400.00 |
| 5/15/2018 | FRG | tc Manny Newberger re: settlement issues | 0.50 | $500.00 | $250.00 |

| | | | | | |
|---|---|---|---|---|---|
| 5/15/2018 | IMJ | checked on status of case | 0.10 | $230.00 | $23.00 |
| 5/16/2018 | CPM | Appear on status for FRG; follow up re same | 1.00 | $325.00 | $325.00 |
| 5/25/2018 | FRG | reviewed, edited settlement agreement, class notice | 0.80 | $500.00 | $400.00 |
| 6/05/2018 | FRG | tc Manny Newberger re: additional payment for the class | 0.10 | $500.00 | $50.00 |
| 6/12/2018 | FRG | revised settlement documents; e-mailed Manny Newburger re: final class number | 0.50 | $500.00 | $250.00 |
| 6/13/2018 | FRG | edited settlement documents | 2.10 | $500.00 | $1,050.00 |
| 6/14/2018 | FRG | Further edited draft settlement documents | 0.80 | $500.00 | $400.00 |
| 6/14/2018 | IL | drafted Notice of Motion for Preliminary Approval | 0.30 | $125.00 | $37.50 |
| 6/14/2018 | IL | logged MINUTE entry | 0.10 | $125.00 | $12.50 |
| 6/15/2018 | FRG | tc Manny Newberger re: number of additional class members | 0.10 | $500.00 | $50.00 |
| 7/19/2018 | CPM | review settlement documents; follow OC re same | 0.30 | $325.00 | $97.50 |
| 7/19/2018 | EY | logged minute entry | 0.10 | $125.00 | $12.50 |
| 7/20/2018 | CPM | Revisions and review of settlement documents; email exchange w OC re same; conf DAE re same | 3.20 | $325.00 | $1,040.00 |
| 7/20/2018 | CPM | Email exchange re class settlement def | 0.40 | $325.00 | $130.00 |
| 7/23/2018 | IMJ | checked status of preliminary approval brief | 0.10 | $230.00 | $23.00 |
| 8/15/2018 | CPM | Rev all settlement correspondence and negotiations; draft mtn to compel; conf OC re same; follow up re same | 2.80 | $325.00 | $910.00 |
| 8/16/2018 | CPM | Appear on status; prep for same | 1.00 | $325.00 | $325.00 |
| 8/16/2018 | CPM | Conf MN re class size and payment issue | 0.40 | $325.00 | $130.00 |

| | | | | | |
|---|---|---|---|---|---|
| 8/17/2018 | CPM | Work on settlement docs | 1.30 | $325.00 | $422.50 |
| 8/17/2018 | RW | scanning and saving docs | 0.10 | $125.00 | $12.50 |
| 8/20/2018 | CPM | Work on settlement agreement | 2.20 | $325.00 | $715.00 |
| 8/20/2018 | CPM | Work on settlement agreement | 0.20 | $325.00 | $65.00 |
| 8/20/2018 | EY | docketed CASR 8.16 | 0.10 | $125.00 | $12.50 |
| 8/21/2018 | CMC | work on sett agree | 0.50 | $700.00 | $350.00 |
| 8/21/2018 | CPM | Revisions to agreement; review re same; conf CMC re same; email to OC re same | 0.90 | $325.00 | $292.50 |
| 8/22/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 8/28/2018 | CPM | Follow up OC re settlement changes | 0.20 | $325.00 | $65.00 |
| 8/28/2018 | RW | processing docs | 0.10 | $125.00 | $12.50 |
| 9/10/2018 | CPM | Follow up OC re settlement agreement and status | 0.30 | $325.00 | $97.50 |
| 9/13/2018 | CPM | Status on settlement | 1.00 | $325.00 | $325.00 |
| 9/14/2018 | EY | docketed minute order 9/13 | 0.10 | $125.00 | $12.50 |
| 9/19/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 9/19/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 9/20/2018 | CPM | Drafting class notice | 0.90 | $325.00 | $292.50 |
| 9/24/2018 | CPM | Draft, review and revise class notice, joint motion preliminary approval, preliminary approval order | 3.20 | $325.00 | $1,040.00 |
| 9/24/2018 | CPM | drafting, review and revise final approval order, email OC | 0.60 | $325.00 | $195.00 |
| 9/25/2018 | CPM | Email exchange w OC re settlement docs | 0.40 | $325.00 | $130.00 |
| 9/26/2018 | CPM | Review, revise settlement agreement; email to OC re same | 1.20 | $325.00 | $390.00 |

| | | | | | |
|---|---|---|---|---|---|
| 9/26/2018 | RW | saving docs | 0.10 | $125.00 | $12.50 |
| 10/01/2018 | CPM | Call to OC re agreement | 0.20 | $325.00 | $65.00 |
| 10/01/2018 | CPM | PC OC re change to agreement and proposed Adendum language | 0.30 | $325.00 | $97.50 |
| 10/01/2018 | CPM | review and revise addendum | 0.30 | $450.00 | $135.00 |
| 10/01/2018 | CPM | Revise and finalize settlement docs for filing; email exchange oc; prep for filing | 0.90 | $450.00 | $405.00 |
| 10/01/2018 | CPM | Review OC settlement agreement; Review priopr versions; email re same | 0.40 | $325.00 | $130.00 |
| 10/01/2018 | RW | processing doc | 0.10 | $125.00 | $12.50 |
| 10/01/2018 | RW | mtn for prelim approval | 1.00 | $125.00 | $125.00 |
| 10/02/2018 | EY | docketed ntc of mtn for prelim approval | 0.10 | $125.00 | $12.50 |
| 10/02/2018 | RW | processing docs | 0.10 | $125.00 | $12.50 |
| 10/03/2018 | CPM | Prep for Prelim Approval Hearing | 0.90 | $450.00 | $405.00 |
| 10/03/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 10/04/2018 | CPM | Revise preliminary approval order with dates; email to OC re same | 0.30 | $450.00 | $135.00 |
| 10/04/2018 | CPM | Prep for Prelim Approval; Attend Prelim Approval; Follow up re deadlines; Email exchange OC re same | 1.90 | $450.00 | $855.00 |
| 10/04/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 10/04/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 10/04/2018 | PMW | Attend Status hearing with CPM | 0.80 | $230.00 | $184.00 |
| 10/05/2018 | EY | dkt minute order 10/4 | 0.10 | $125.00 | $12.50 |
| 10/05/2018 | EY | Dkt CASR 10/4 | 0.20 | $125.00 | $25.00 |
| 10/05/2018 | RW | docketing | 0.10 | $125.00 | $12.50 |
| 10/10/2018 | RW | processed signature sheets, compiled settlement, sent to OC | 0.20 | $125.00 | $25.00 |

| | | | | | |
|---|---|---|---|---|---|
| 10/11/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 10/12/2018 | RW | logging adn filing | 0.10 | $125.00 | $12.50 |
| 10/19/2018 | CPM | Finalize order and submit to chambers; review file re signed agreement and filings | 0.30 | $450.00 | $135.00 |
| 10/22/2018 | RW | filed settlement agreement with court | 0.20 | $125.00 | $25.00 |
| 11/14/2018 | CPM | Follow up re entry preliminary approval | 0.40 | $450.00 | $180.00 |
| 11/15/2018 | CPM | Call from OC re prelim approval order; review deadlines; email to OC re same | 0.40 | $450.00 | $180.00 |
| 11/19/2018 | CPM | Follow up OC re prelim approval order dates | 0.20 | $450.00 | $90.00 |
| 11/27/2018 | CPM | Review OC proposed motion; conf DAE re same; revisions re same; email to OC re same | 0.30 | $450.00 | $135.00 |
| 11/27/2018 | CPM | Request exclusion; respond and forward to OC; follow up re ame | 0.20 | $450.00 | $90.00 |
| 11/28/2018 | CPM | Review OC draft order; response re same; review emails re same | 0.30 | $450.00 | $135.00 |
| 11/29/2018 | RH | Logging | 0.10 | $125.00 | $12.50 |
| 12/04/2018 | CPM | Mtn to withdraw; review and revise | 0.20 | $450.00 | $90.00 |
| 12/04/2018 | CPM | Follow up prelim approval order | 0.20 | $450.00 | $90.00 |
| 12/04/2018 | CPM | Respond client email | 0.30 | $450.00 | $135.00 |
| 12/04/2018 | CPM | review court order; email oc; update prelim approval order and send OC; update TM re same | 0.30 | $450.00 | $135.00 |
| 12/04/2018 | EY | dkt ntc of mtn to withdraw as counsel | 0.10 | $125.00 | $12.50 |
| 12/04/2018 | EY | dkt minute order 12/4 | 0.10 | $125.00 | $12.50 |
| 12/04/2018 | JE | email from CPM, filed, research judge's rules, drafted letter, scanned, emailed to OC, prepared copy for judge, docket memo | 0.80 | $125.00 | $100.00 |

| | | | | | |
|---|---|---|---|---|---|
| 12/04/2018 | JE | emails to and from CPM, drafted motiona and notice of moiton | 0.40 | $125.00 | $50.00 |
| 12/05/2018 | CPM | Follow up OC re order | 0.20 | $450.00 | $90.00 |
| 12/06/2018 | CPM | Email follow up OC re notice; follow up call OC re same; conf DAE re same; follow up re same | 0.40 | $450.00 | $180.00 |
| 12/12/2018 | CPM | Review and revise class notice with dates from OC for administrator; email re same to OC | 0.30 | $450.00 | $135.00 |
| 12/12/2018 | EY | dkt memo dates | 0.30 | $125.00 | $37.50 |
| 12/14/2018 | CPM | Review class notice respond to OC | 0.30 | $450.00 | $135.00 |
| 12/17/2018 | RH | Logging and Filing | 0.20 | $125.00 | $25.00 |
| 1/11/2019 | CPM | Review Sample notice and claim and respond | 0.30 | $450.00 | $135.00 |
| 1/15/2019 | CPM | Review class list and agreement re same | 0.30 | $450.00 | $135.00 |
| 1/31/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 1/31/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 1/31/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 1/31/2019 | RW | class calls | 0.40 | $125.00 | $50.00 |
| 1/31/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 1/31/2019 | RW | class call | 0.20 | $125.00 | $25.00 |
| 1/31/2019 | RW | class call | 0.20 | $125.00 | $25.00 |
| 2/01/2019 | CPM | Respond class member inquiry | 0.30 | $450.00 | $135.00 |
| 2/01/2019 | CPM | Class member inquiry | 0.30 | $450.00 | $135.00 |
| 2/01/2019 | CPM | Call from class member | 0.80 | $450.00 | $360.00 |
| 2/01/2019 | RW | class calls | 0.50 | $125.00 | $62.50 |
| 2/01/2019 | RW | returning class calls | 0.40 | $125.00 | $50.00 |

| | | | | | |
|---|---|---|---|---|---|
| 2/01/2019 | RW | emailed class member | 0.20 | $125.00 | $25.00 |
| 2/01/2019 | RW | emailing, calling class members. | 0.30 | $125.00 | $37.50 |
| 2/01/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 2/01/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 2/01/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 2/01/2019 | RW | class calls | 0.20 | $125.00 | $25.00 |
| 2/01/2019 | RW | class calls | 0.40 | $125.00 | $50.00 |
| 2/04/2019 | CPM | Respond class member calls; follow up OC re same; follow up class members re same | 0.40 | $450.00 | $180.00 |
| 2/04/2019 | EY | pc class member | 0.20 | $125.00 | $25.00 |
| 2/04/2019 | EY | pc class members | 0.30 | $125.00 | $37.50 |
| 2/04/2019 | EY | read/resp to email from rw | 0.10 | $125.00 | $12.50 |
| 2/04/2019 | RH | Class member calls | 0.30 | $125.00 | $37.50 |
| 2/04/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 2/04/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 2/04/2019 | RW | calling class members | 0.20 | $125.00 | $25.00 |
| 2/04/2019 | RW | class calls | 0.30 | $125.00 | $37.50 |
| 2/04/2019 | RW | class calls | 0.40 | $125.00 | $50.00 |
| 2/04/2019 | RW | class calls | 0.20 | $125.00 | $25.00 |
| 2/04/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 2/05/2019 | CPM | Respond to class member question | 0.30 | $450.00 | $135.00 |
| 2/05/2019 | CPM | Review paralegal script; edits re same; review notice re same | 0.30 | $450.00 | $135.00 |
| 2/05/2019 | RH | Class member calls | 0.80 | $125.00 | $100.00 |
| 2/05/2019 | RW | drafting and recording class script | 0.40 | $125.00 | $50.00 |

| | | | | | |
|---|---|---|---|---|---|
| 2/05/2019 | RW | class calls | 0.80 | $125.00 | $100.00 |
| 2/05/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 2/05/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 2/05/2019 | RW | class calls | 0.20 | $125.00 | $25.00 |
| 2/06/2019 | RW | class call | 0.20 | $125.00 | $25.00 |
| 2/06/2019 | RW | class call | 1.00 | $125.00 | $125.00 |
| 2/06/2019 | RW | class call(s) | 0.60 | $125.00 | $75.00 |
| 2/07/2019 | RW | class call | 0.20 | $125.00 | $25.00 |
| 2/07/2019 | RW | class calls | 0.10 | $125.00 | $12.50 |
| 2/08/2019 | RH | Class member calls | 0.50 | $125.00 | $62.50 |
| 2/08/2019 | RW | class calls. | 0.20 | $125.00 | $25.00 |
| 2/08/2019 | RW | class call | 0.20 | $125.00 | $25.00 |
| 2/11/2019 | RW | class calls | 0.20 | $125.00 | $25.00 |
| 2/11/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 2/11/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 2/11/2019 | RW | spoke to class member | 0.10 | $125.00 | $12.50 |
| 2/11/2019 | RW | reaching out to class members | 0.20 | $125.00 | $25.00 |
| 2/12/2019 | CPM | Work prelim fee petition | 0.20 | $450.00 | $90.00 |
| 2/12/2019 | CPM | Review Admin Emails and claim forms; follow up re handling of same | 0.40 | $450.00 | $180.00 |
| 2/12/2019 | CPM | Draft, review and revise Prelim Petition fees; final revisions and prep to file | 1.20 | $450.00 | $540.00 |
| 2/12/2019 | CPM | Review ECLG fees and expenses re redactions; prep materials for filing | 0.40 | $450.00 | $180.00 |
| 2/12/2019 | RW | emailed class admin | 0.10 | $125.00 | $12.50 |
| 2/12/2019 | RW | calling class members | 0.30 | $125.00 | $37.50 |

| | | | | | |
|---|---|---|---|---|---|
| 2/12/2019 | RW | drafting fee petition | 0.30 | $125.00 | $37.50 |
| 2/12/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| 2/12/2019 | RW | following up re class members and claim forms | 0.30 | $125.00 | $37.50 |
| 2/12/2019 | RW | spoke to class member | 0.20 | $125.00 | $25.00 |
| 2/13/2019 | RW | class call | 0.10 | $125.00 | $12.50 |
| | | | | Total Fees | $34,798.00 |

***Expenses***

| Start Date | Description | Charges |
|---|---|---|
| 7/17/2017 | Print | $1.65 |
| 7/17/2017 | Print | $0.15 |
| 7/17/2017 | Print | $1.65 |
| 7/17/2017 | Print | $1.50 |
| 7/18/2017 | Print | $1.65 |
| 7/18/2017 | Print | $0.90 |
| 7/18/2017 | Print | $1.65 |
| 7/18/2017 | Print | $0.90 |
| 7/18/2017 | Print | $1.65 |
| 7/18/2017 | Print | $1.95 |
| 7/18/2017 | Print | $1.05 |
| 7/18/2017 | Print | $0.60 |
| 7/18/2017 | Print | $1.65 |
| 7/18/2017 | Print | $0.15 |
| 7/18/2017 | Print | $1.65 |
| 7/18/2017 | Print | $0.75 |

| | | |
|---|---|---|
| 7/18/2017 | Print | $1.05 |
| 7/18/2017 | Print | $1.65 |
| 7/19/2017 | Print | $0.45 |
| 7/20/2017 | Print | $0.90 |
| 7/20/2017 | Print | $1.65 |
| 7/20/2017 | Print | $1.80 |
| 7/21/2017 | Print | $0.30 |
| 7/21/2017 | Filing Fee-DAE VISA | $400.00 |
| 7/24/2017 | Print | $7.50 |
| 7/25/2017 | Process server fee-ck#1119 | $110.00 |
| 7/25/2017 | Postage | $1.19 |
| 7/25/2017 | Postage | $6.65 |
| 7/25/2017 | Print | $0.60 |
| 7/25/2017 | Print | $0.30 |
| 7/25/2017 | Print | $2.40 |
| 7/25/2017 | Print | $30.00 |
| 7/27/2017 | Filing Fee-DAE VISA | $400.00 |
| 7/27/2017 | Print | $0.30 |
| 10/20/2017 | Legal research costCK#1317 | $0.90 |
| 10/24/2017 | Print | $0.30 |
| 10/24/2017 | Print | $3.15 |
| 11/13/2017 | Print | $2.25 |
| 12/01/2017 | Print | $1.95 |

| | | |
|---|---|---|
| 12/04/2017 | Print | $0.75 |
| 12/05/2017 | Print | $0.75 |
| 12/05/2017 | Print | $0.90 |
| 12/06/2017 | Print | $0.75 |
| 12/06/2017 | Print | $0.75 |
| 12/08/2017 | Print | $0.60 |
| 12/08/2017 | Print | $0.60 |
| 12/08/2017 | Print | $0.75 |
| 12/11/2017 | Print | $0.75 |
| 12/13/2017 | Print | $0.15 |
| 12/13/2017 | Print | $0.15 |
| 12/13/2017 | Print | $0.60 |
| 12/14/2017 | Print | $0.15 |
| 12/14/2017 | Print | $0.15 |
| 12/14/2017 | Print | $0.15 |
| 12/14/2017 | Print | $0.60 |
| 12/14/2017 | Print | $0.15 |
| 12/14/2017 | Print | $0.15 |
| 12/15/2017 | Print | $0.15 |
| 12/15/2017 | Print | $0.60 |
| 12/18/2017 | Print | $0.15 |
| 12/18/2017 | Print | $0.15 |
| 12/18/2017 | Print | $0.15 |

| | | |
|---|---|---|
| 12/18/2017 | Print | $0.15 |
| 12/18/2017 | Print | $2.25 |
| 12/18/2017 | Print | $0.75 |
| 1/03/2018 | Legal research cost | $8.13 |
| 1/23/2018 | Legal research costCK#1460 | $0.90 |
| 2/20/2018 | Print | $0.15 |
| 2/20/2018 | Print | $0.15 |
| 2/20/2018 | Print | $0.15 |
| 2/20/2018 | Print | $2.25 |
| 3/06/2018 | Print | $1.05 |
| 3/15/2018 | Print | $0.30 |
| 3/15/2018 | Print | $0.15 |
| 3/15/2018 | Print | $0.15 |
| 3/15/2018 | Print | $0.45 |
| 3/15/2018 | Print | $1.65 |
| 3/15/2018 | Print | $0.60 |
| 3/15/2018 | Print | $0.60 |
| 3/15/2018 | Print | $1.80 |
| 3/15/2018 | Print | $1.35 |
| 3/15/2018 | Print | $0.45 |
| 3/20/2018 | Print | $0.15 |
| 3/20/2018 | Copy | $0.15 |
| 3/20/2018 | Print | $0.90 |

| | | |
|---|---|---|
| 3/20/2018 | Print | $9.90 |
| 4/02/2018 | Print | $1.80 |
| 4/02/2018 | Print | $0.15 |
| 4/02/2018 | Print | $1.50 |
| 4/02/2018 | Print | $1.05 |
| 4/02/2018 | Print | $1.05 |
| 4/02/2018 | Print | $1.35 |
| 4/18/2018 | Legal research cost CK#1700 | $1.80 |
| 5/16/2018 | Copy | $0.15 |
| 6/13/2018 | Print | $1.35 |
| 6/13/2018 | Print | $1.35 |
| 6/13/2018 | Print | $0.15 |
| 10/01/2018 | Print | $0.45 |
| 10/02/2018 | Print | $0.30 |
| 10/02/2018 | Print | $0.15 |
| 10/02/2018 | Print | $11.40 |
| 10/02/2018 | Print | $0.45 |
| 10/02/2018 | Print | $0.45 |
| 10/02/2018 | Print | $11.40 |
| 10/03/2018 | Print | $11.40 |
| 10/10/2018 | Print | $0.15 |
| 10/10/2018 | Print | $0.15 |
| 12/04/2018 | Print | $0.90 |
| 12/04/2018 | Print | $0.60 |

| | | |
|---|---|---|
| 12/04/2018 | Print | $0.15 |
| 12/04/2018 | Print | $0.15 |
| | Total Expenses | $1,089.17 |
| Total New Charges | | $35,887.17 |

***Staff Summary***

| Name | Position | Hours | Rate | Fees |
|---|---|---|---|---|
| Aimee Alvarez | Paralegal | 0.90 | $125.00 | $112.50 |
| Corey J Varma | Associate | 0.10 | $230.00 | $23.00 |
| Cathleen M. Combs | Partner | 1.00 | $700.00 | $700.00 |
| Cassandra P Miller | Partner | 22.40 | $325.00 | $7,280.00 |
| Cassandra P Miller | Partner | 13.80 | $450.00 | $6,210.00 |
| Daniel A. Edelman | Partner | 2.00 | $700.00 | $1,400.00 |
| Drishti Patel | | 0.30 | $125.00 | $37.50 |
| Cortney McInerney | Paralegal | 1.80 | $125.00 | $225.00 |
| Francis R. Greene | Partner | 21.00 | $500.00 | $10,500.00 |
| Heather A. Kolbus | Partner | 0.10 | $500.00 | $50.00 |
| Itzi Llamas | | 6.30 | $125.00 | $787.50 |
| Isabella Janusz | Associate | 0.20 | $230.00 | $46.00 |
| Jenna Studtmann | Paralegal | 1.30 | $125.00 | $162.50 |
| James O. Latturner | Partner | 0.40 | $700.00 | $280.00 |
| Paul M Waldera | Associate | 0.80 | $230.00 | $184.00 |
| Patricia N Jjemba | | 20.00 | $230.00 | $4,600.00 |
| Rachael Hess | | 1.90 | $125.00 | $237.50 |
| Miguel Ruiz | | 1.80 | $125.00 | $225.00 |
| Rufus Coates Welsh | Paralegal | 13.90 | $125.00 | $1,737.50 |
| | Tot Hrs: | 110.00 | | |

Please remit payments by check or money order to:
20 S. Clark Street, Suite 1500
Chicago, IL 60603

For security reasons, we do not retain credit card numbers for automatic charges. Please call 312-739-4200 to make credit card or debit card payments.



# APPENDIX H

Edelman, Combs, Latturner & Goodwin LLC
20 S. Clark Street
Suite 1500
Chicago, IL 60603-3403

,

Date: 2/13/2019

Regarding: DYNAMIC RECOVERY SOLUTIONS V. SIDDIQI, SHABIH
Invoice No: 00091

***Services Rendered***

| Date | Staff | Description | Hours | Rate | Charges |
|---|---|---|---|---|---|
| 8/16/2017 | CPM | Review new file; New Case memo to CJV | 0.30 | $325.00 | $97.50 |
| 8/17/2017 | CJV | review new file | 0.20 | $230.00 | $46.00 |
| 8/17/2017 | RW | sent complaint to client for review, circulating cmplt | 0.40 | $125.00 | $50.00 |
| 8/18/2017 | JOL | work on compllaint and class motion; review of prior case; reseach; conf dae, cpm | 1.30 | $700.00 | $910.00 |
| 8/21/2017 | CPM | Review complaint with client | 0.30 | $325.00 | $97.50 |
| 8/23/2017 | RW | looking into lack of judge assignment, filing mtn for class cert and memo ISO | 0.40 | $125.00 | $50.00 |
| 8/23/2017 | RW | filing notices of mtn, mtn to enter and continue | 0.50 | $125.00 | $62.50 |
| 8/23/2017 | RW | prepping and filing complaint, civil cover sheet, and all appearances. prepping mtn for class cert, mtn to enter and continue, notice of mtn, and exhibits | 1.80 | $125.00 | $225.00 |
| 8/24/2017 | JOL | rev of court order; rev of file | 0.30 | $700.00 | $210.00 |
| 8/24/2017 | RW | processing initial filings (courtesy copy, client copy, TM saving and printing | 0.90 | $125.00 | $112.50 |
| 8/24/2017 | RW | prepping and submitting proposed summons to court | 0.40 | $125.00 | $50.00 |

| | | | | | |
|---|---|---|---|---|---|
| 8/24/2017 | RW | calling process servers, submitting check requsts | 0.30 | $125.00 | $37.50 |
| 8/24/2017 | RW | compiling summons packets, drafting signing and scanning cover letters, sending all summons out | 0.40 | $125.00 | $50.00 |
| 8/25/2017 | CJV | Receipt of matter: Shabib Siddiqi v. Dynamic Recovery Solutions, LLC and Pinnacle Credit Services, LLC | 0.10 | $230.00 | $23.00 |
| 8/25/2017 | CJV | review of file and Rule 4; emails to/from OC; conf CPM re same | 0.30 | $230.00 | $69.00 |
| 8/25/2017 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 8/25/2017 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 8/25/2017 | RW | logging nad filing | 0.10 | $125.00 | $12.50 |
| 8/28/2017 | CJV | ph call with clerk re motion to enter and continue | 0.10 | $230.00 | $23.00 |
| 8/28/2017 | RW | called client re typo in complaint, spoke to CJV, called clerks office | 0.40 | $125.00 | $50.00 |
| 8/28/2017 | RW | drafting first amended complaint | 0.10 | $125.00 | $12.50 |
| 8/29/2017 | RW | drafting JISR | 0.40 | $125.00 | $50.00 |
| 8/29/2017 | RW | working on first amended copmlaint | 0.30 | $125.00 | $37.50 |
| 8/29/2017 | RW | prepping, filing, and distributing first amended complaint (process servers judge client etc) | 1.50 | $125.00 | $187.50 |
| 8/31/2017 | RW | filing and processing SRE | 0.20 | $125.00 | $25.00 |
| 9/05/2017 | RW | TM saving | 0.10 | $125.00 | $12.50 |
| 9/05/2017 | RW | logging and filing/processing docs | 0.10 | $125.00 | $12.50 |
| 9/05/2017 | RW | logging adn filing | 0.10 | $125.00 | $12.50 |
| 9/06/2017 | RW | called process server/emailed docs | 0.20 | $125.00 | $25.00 |
| 9/12/2017 | CJV | emails to/from OC re conference; conf CPM | 0.20 | $230.00 | $46.00 |

| | | | | | |
|---|---|---|---|---|---|
| 9/12/2017 | CPM | Response re litigation conference w OC | 0.30 | $325.00 | $97.50 |
| 9/12/2017 | RW | docketed date | 0.10 | $125.00 | $12.50 |
| 9/13/2017 | CPM | Review file for meeting w OC | 0.30 | $325.00 | $97.50 |
| 9/15/2017 | RW | emailing process server | 0.10 | $125.00 | $12.50 |
| 9/18/2017 | RW | filing and processing summons returned executed (printing, saving, courtesy copies) | 0.30 | $125.00 | $37.50 |
| 9/19/2017 | RW | logging adn filing | 0.10 | $125.00 | $12.50 |
| 9/20/2017 | JOL | review of pinnicle answer | 0.30 | $700.00 | $210.00 |
| 9/21/2017 | CJV | emails to/from OC re ph call scheduling | 0.20 | $230.00 | $46.00 |
| 9/21/2017 | RW | drafted discovery requests | 0.40 | $125.00 | $50.00 |
| 9/22/2017 | RW | logging and filing, organizing docs, printing missing docs | 0.30 | $125.00 | $37.50 |
| 9/26/2017 | CJV | emails to/from OC; conf CPM re extension | 0.20 | $230.00 | $46.00 |
| 9/26/2017 | CJV | email to/from OC | 0.20 | $230.00 | $46.00 |
| 9/26/2017 | CPM | Email exchange w OC | 0.20 | $325.00 | $65.00 |
| 9/28/2017 | RW | logging adn filing | 0.10 | $125.00 | $12.50 |
| 10/02/2017 | CJV | email to/from OC re status date extension | 0.20 | $230.00 | $46.00 |
| 10/02/2017 | CJV | conf CPM; prepare joint status report | 0.60 | $230.00 | $138.00 |
| 10/05/2017 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 10/18/2017 | CPM | Revisions to discovery responses | 1.20 | $325.00 | $390.00 |
| 10/18/2017 | JOL | review of pinnacle answer | 0.30 | $700.00 | $210.00 |
| 10/19/2017 | CJV | prepare Mandatory Initial Disclosures; ph call w client; review d's mid | 0.60 | $230.00 | $138.00 |
| 10/19/2017 | CPM | Review D MID and docs produced; Rule 37 memo and summary docs | 0.40 | $325.00 | $130.00 |

| | | | | | |
|---|---|---|---|---|---|
| 10/19/2017 | RW | sent out MIDP to all parties by mail and email, prepped drafted and filed notice of service, processed (courtesy copies, our copies, TM saving) | 0.60 | $125.00 | $75.00 |
| 10/19/2017 | RW | processed D's MIIDP docs | 0.20 | $125.00 | $25.00 |
| 10/20/2017 | CJV | prepare r37 letter to oc re midp responses; find sample protective order | 1.10 | $230.00 | $253.00 |
| 10/20/2017 | JOL | review of pinnicle discovery responses | 0.30 | $700.00 | $210.00 |
| 10/23/2017 | CJV | prepare P's midp verification; ph call client | 0.30 | $230.00 | $69.00 |
| 10/23/2017 | CJV | finish prepareingprotective order/rule37 letter | 0.20 | $230.00 | $46.00 |
| 10/23/2017 | RW | sent verification sheet to client for signature | 0.20 | $125.00 | $25.00 |
| 10/23/2017 | RW | amending mailing to client before it went out | 0.10 | $125.00 | $12.50 |
| 10/23/2017 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 10/24/2017 | CJV | finalize 26f report | 0.50 | $230.00 | $115.00 |
| 10/24/2017 | CJV | prep for court | 0.40 | $230.00 | $92.00 |
| 10/24/2017 | CPM | Call from OC re plan; Email to CJV re same | 0.30 | $325.00 | $97.50 |
| 10/24/2017 | CPM | Revisions to Planning report | 0.30 | $325.00 | $97.50 |
| 10/24/2017 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 10/25/2017 | CJV | ph call/emails with OC; finalize initial status report; attend Initial Status Hearing | 1.20 | $230.00 | $276.00 |
| 10/26/2017 | CJV | research one way intervention / costello | 0.30 | $230.00 | $69.00 |
| 10/27/2017 | RW | turned folder into binder, sent to AB, created logging file | 0.80 | $125.00 | $100.00 |
| 11/01/2017 | CJV | prepare initial disco reqs | 0.60 | $230.00 | $138.00 |

| | | | | | |
|---|---|---|---|---|---|
| 11/02/2017 | CJV | conf rw re client midp verification | 0.10 | $230.00 | $23.00 |
| 11/02/2017 | RW | called client re discovery verification | 0.10 | $125.00 | $12.50 |
| 11/07/2017 | CJV | conf RW re client MIDP verification | 0.10 | $230.00 | $23.00 |
| 11/08/2017 | CPM | Review revise discovery requests | 0.30 | $325.00 | $97.50 |
| 11/08/2017 | RW | called client to follow up on MIDP verification sheet | 0.20 | $125.00 | $25.00 |
| 11/10/2017 | RW | attempted to call client | 0.10 | $125.00 | $12.50 |
| 11/16/2017 | RW | called client | 0.20 | $125.00 | $25.00 |
| 11/20/2017 | JOL | review of responses to discovery | 0.40 | $700.00 | $280.00 |
| 11/20/2017 | JOL | rev of answers to discovery; rev of file | 0.40 | $700.00 | $280.00 |
| 11/22/2017 | CJV | revise disco reqs per DAE comments | 0.20 | $230.00 | $46.00 |
| 11/28/2017 | CJV | review file (.1); finalize disco reqs per dae commetns (.5) | 0.60 | $230.00 | $138.00 |
| 11/29/2017 | CJV | ph call to client re verification; answered questions | 0.30 | $230.00 | $69.00 |
| 11/29/2017 | RW | sent mailing to client | 0.20 | $125.00 | $25.00 |
| 11/30/2017 | CJV | revise disco reqs per DAE comments | 0.10 | $230.00 | $23.00 |
| 11/30/2017 | RW | processing discovery docs | 0.20 | $125.00 | $25.00 |
| 11/30/2017 | RW | prepping disc requests | 0.10 | $125.00 | $12.50 |
| 12/01/2017 | CJV | ph call w OC re verification (.1); review file (.1); contact client (.1) | 0.30 | $230.00 | $69.00 |
| 12/01/2017 | CJV | finalzie and send out disco reqs (.1); emails to/from OC re dep availability of client (.2) | 0.30 | $230.00 | $69.00 |
| 12/01/2017 | JE | drafted cover letters, printed, scanned, saved, mailed to OC with discovery requests | 0.40 | $125.00 | $50.00 |
| 12/04/2017 | CJV | ph call to client; emails from OC re dep availability | 0.30 | $230.00 | $69.00 |
| 12/05/2017 | RW | listened to voicemail, spoke to | 0.20 | $125.00 | $25.00 |

| | | CJV,called client and left message | | | |
|---|---|---|---|---|---|
| 12/06/2017 | CJV | ph call to client re verification and dates for dep | 0.10 | $230.00 | $23.00 |
| 12/07/2017 | CJV | ph call with client re dep availability (.4); conf RW re verification (.1); conf CPM re VM from OC (.1); call OC re same (.2); email to client confirming call (.1) | 0.90 | $230.00 | $207.00 |
| 12/07/2017 | RW | sent verification sheet to OC | 0.20 | $125.00 | $25.00 |
| 12/07/2017 | RW | Scheduling transportation for deposition CL | 0.10 | $125.00 | $12.50 |
| 12/08/2017 | CJV | email to client re dep availability; calls to OC re same | 0.30 | $230.00 | $69.00 |
| 12/08/2017 | CJV | ph call with OC re deps and availability (.2); conf FRG / CPM (.2) | 0.40 | $230.00 | $92.00 |
| 12/08/2017 | RW | logging and filing | 0.20 | $125.00 | $25.00 |
| 12/11/2017 | CJV | finalize r37 email and protective order; email same to OC | 0.40 | $230.00 | $92.00 |
| 12/11/2017 | CJV | emails to/from OC re Client's dep confirmed (.2); conf CPM RW re same (.2); firm wide email re newburger (.1) | 0.50 | $230.00 | $115.00 |
| 12/11/2017 | CJV | conf JOL re newburger | 0.30 | $230.00 | $69.00 |
| 12/11/2017 | CJV | email to client re dep (.1); email from OC re protective order and conf RW re same (.1) | 0.20 | $230.00 | $46.00 |
| 12/11/2017 | CJV | ph call with siddiqi re dep | 0.20 | $230.00 | $46.00 |
| 12/11/2017 | CPM | rev OC email; email/conf rw and cjv re same | 0.40 | $325.00 | $130.00 |
| 12/11/2017 | RW | docketed date | 0.10 | $125.00 | $12.50 |
| 12/11/2017 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 12/12/2017 | CJV | draft dep prep packet | 1.20 | $230.00 | $276.00 |
| 12/12/2017 | CJV | review redlines changes to protective order (.3); emails to/from OC re same (.2) | 0.50 | $230.00 | $115.00 |

| | | | | | |
|---|---|---|---|---|---|
| 12/12/2017 | RW | filling out depo packet, searching dockets for preivous cases with client involved | 0.50 | $125.00 | $62.50 |
| 12/12/2017 | RW | drafting redlined version of protective order | 0.30 | $125.00 | $37.50 |
| 12/13/2017 | CJV | email conf CPM re dep of siddiqi | 0.20 | $230.00 | $46.00 |
| 12/13/2017 | RW | prepping depo packet for client | 0.30 | $125.00 | $37.50 |
| 12/13/2017 | RW | printing previous case dockets for CPM | 0.30 | $125.00 | $37.50 |
| 12/14/2017 | CJV | prep objs to notice of dep; conf CPM DAE and RW re same | 0.60 | $230.00 | $138.00 |
| 12/14/2017 | CPM | Review depo notice from OC; respond pursuant to R 37; conf CJV re same; Review objection to notice | 0.60 | $325.00 | $195.00 |
| 12/14/2017 | JOL | review of emails; rev of file | 0.20 | $700.00 | $140.00 |
| 12/14/2017 | RW | pricessing notice of depo | 0.10 | $125.00 | $12.50 |
| 12/15/2017 | RW | served objections to notice of depo | 0.20 | $125.00 | $25.00 |
| 12/18/2017 | CJV | email to Oc re r 37 letter followup | 0.10 | $230.00 | $23.00 |
| 12/18/2017 | CJV | ph call with corinne heggie re dep issue, protective order, and insurance discl | 0.40 | $230.00 | $92.00 |
| 12/18/2017 | CJV | conf CL and client re car ride to dep | 0.30 | $230.00 | $69.00 |
| 12/18/2017 | CJV | emails to/from OC re client's dep | 0.20 | $230.00 | $46.00 |
| 12/19/2017 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 12/20/2017 | CJV | conf LS re transportation and update dep prep packet re same | 0.20 | $230.00 | $46.00 |
| 12/20/2017 | CJV | finalize dep prep packet; emial to client | 0.20 | $230.00 | $46.00 |
| 12/20/2017 | CJV | emails to/from client | 0.20 | $230.00 | $46.00 |
| 12/20/2017 | LS | Made travel arrangements for client Shabih Siddiqi for dep on 1.18.18 | 0.30 | $125.00 | $37.50 |

| | | | | | |
|---|---|---|---|---|---|
| 12/20/2017 | RW | sent docs to client | 0.20 | $125.00 | $25.00 |
| 12/21/2017 | CJV | emails to/from client re transportation to dep; research exclusion of wife; corr LS re cost of addtl passenger | 0.40 | $230.00 | $92.00 |
| 12/29/2017 | CPM | PC from OC re exten disc; Email re same; follow up CJV re same | 0.30 | $325.00 | $97.50 |
| 1/03/2018 | CJV | conf cpm re upcoming dep | 0.10 | $230.00 | $23.00 |
| 1/04/2018 | CJV | review file; email to OC re protective order and insurance policies | 0.30 | $230.00 | $69.00 |
| 1/05/2018 | CJV | emails to/from OC re dep of client, insurance, and protective order; conf CPm re same | 0.20 | $230.00 | $46.00 |
| 1/08/2018 | CJV | ph call with client re dep prep; ans questions re same | 0.20 | $230.00 | $46.00 |
| 1/09/2018 | CJV | ph call with OC re disc docs and requested extension; conf CPm re same | 0.50 | $230.00 | $115.00 |
| 1/09/2018 | CJV | email to OC re Extension for defendants' to respond to First set of Written Discovery Requests to Friday 1/12 | 0.20 | $230.00 | $46.00 |
| 1/09/2018 | CJV | emails to/from OC re disc extension; conf CPM re same; | 0.20 | $230.00 | $46.00 |
| 1/09/2018 | CPM | Review R37 to OC and protective order docs | 0.40 | $325.00 | $130.00 |
| 1/10/2018 | RW | prepping and filing mtn for entry of agreed protective order | 0.40 | $125.00 | $50.00 |
| 1/10/2018 | RW | processing mtn for protective order | 0.50 | $125.00 | $62.50 |
| 1/12/2018 | CJV | briefly review disc docs recieved from OC | 0.10 | $230.00 | $23.00 |
| 1/15/2018 | CJV | conf CPm; call clerk re confidentiality order | 0.30 | $230.00 | $69.00 |
| 1/15/2018 | JOL | review of deft discovery responses; review of file | 0.60 | $700.00 | $420.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/15/2018 | TC | leave vm with clerk re confidentiality order | 0.10 | $125.00 | $12.50 |
| 1/16/2018 | CJV | emails to/ from OC re disco docs withheld; review same | 0.30 | $230.00 | $69.00 |
| 1/16/2018 | RW | printing disc docs | 0.10 | $125.00 | $12.50 |
| 1/17/2018 | CJV | conf with CPM re dep prep and ph call with client re same | 1.60 | $230.00 | $368.00 |
| 1/17/2018 | CJV | prep for call with client re deposition | 0.30 | $230.00 | $69.00 |
| 1/17/2018 | CPM | Prep for plt dep prep; conf CJV and DAE re same; Dep prep of client | 1.90 | $325.00 | $617.50 |
| 1/17/2018 | JOL | review of court's confidentiality order | 0.20 | $700.00 | $140.00 |
| 1/17/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 1/17/2018 | RW | processing discovery docs, printing info for CJV, regiestering for Kane County | 0.40 | $125.00 | $50.00 |
| 1/17/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 1/18/2018 | CJV | dep prep with client; attend dep of client; conf/debrief CPM and DAE re same | 5.60 | $230.00 | $1,288.00 |
| 1/18/2018 | CPM | Dep Prep Client; Attend dep of client; follow up re same | 6.80 | $325.00 | $2,210.00 |
| 1/18/2018 | RW | walked clients to car | 0.20 | $125.00 | $25.00 |
| 1/18/2018 | RW | scanning and saving | 0.10 | $125.00 | $12.50 |
| 1/18/2018 | RW | compiling previous siddiqi files into zip | 0.20 | $125.00 | $25.00 |
| 1/18/2018 | RW | looking up bankruptcy filings | 0.10 | $125.00 | $12.50 |
| 1/23/2018 | RW | scanning, saving, logging and filing | 0.20 | $125.00 | $25.00 |
| 1/25/2018 | CPM | Rev disc | 0.40 | $325.00 | $130.00 |
| 1/30/2018 | RW | processing deposition transcript | 0.30 | $125.00 | $37.50 |
| 1/31/2018 | RW | logging nad ifling | 0.10 | $125.00 | $12.50 |
| 2/02/2018 | CJV | ph call with client re errata sheet read through entire transcript | 0.50 | $230.00 | $115.00 |

| | | | | | |
|---|---|---|---|---|---|
| 2/02/2018 | RW | saved doc | 0.10 | $125.00 | $12.50 |
| 2/15/2018 | RW | processed errata sheet from clients depo | 0.20 | $125.00 | $25.00 |
| 2/15/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 2/15/2018 | RW | scanning and saving | 0.10 | $125.00 | $12.50 |
| 2/20/2018 | CPM | Appear on status | 1.00 | $325.00 | $325.00 |
| 2/20/2018 | CPM | Email exchange re settlement; rev d emails; prep court | 0.40 | $325.00 | $130.00 |
| 3/06/2018 | RW | processiing, logging adn filing docs | 0.10 | $125.00 | $12.50 |
| 3/19/2018 | CJV | prepare mtn to consolidate | 0.80 | $230.00 | $184.00 |
| 3/20/2018 | CJV | prepare mot to transfer case to Navarroli | 1.90 | $230.00 | $437.00 |
| 3/20/2018 | CJV | ph call to client re settl; email follow up re same | 0.50 | $230.00 | $115.00 |
| 3/21/2018 | CJV | email from client; conf FRG re same | 0.30 | $230.00 | $69.00 |
| 3/23/2018 | CJV | prep for and ph call to siddiqi re settlement | 0.20 | $230.00 | $46.00 |
| 3/23/2018 | CJV | vm from siddiqi | 0.10 | $230.00 | $23.00 |
| 3/23/2018 | CPM | conf client re settlement terms w FRG and CJV | 0.20 | $325.00 | $65.00 |
| 3/23/2018 | RW | scannign and saving client docs | 0.10 | $125.00 | $12.50 |
| 3/27/2018 | RW | updating OC contact info | 0.20 | $125.00 | $25.00 |
| 3/27/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 3/28/2018 | CJV | review minute order; conf FRG and RW re transfer and reassign case; update same | 0.20 | $230.00 | $46.00 |
| 3/28/2018 | RW | filing and processing mtn to reassign (prepping, filing, printing, saving, courtesy copy, letter to judge and cc to OC) | 0.90 | $125.00 | $112.50 |

| | | | | | |
|---|---|---|---|---|---|
| 3/29/2018 | RW | sent filings to cleint | 0.10 | $125.00 | $12.50 |
| 4/02/2018 | RW | logging and filing | 0.20 | $125.00 | $25.00 |
| 4/04/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 4/10/2018 | CPM | Conf FRG re motion and clerk email; Email exchange w OC re same; Conf FRG re related case | 0.30 | $325.00 | $97.50 |
| 4/10/2018 | CPM | Conf DAE; review settlement terms; respond to atty email; mark revision to agreement; conf frg re same | 0.40 | $325.00 | $130.00 |
| 4/10/2018 | CPM | Call to clerk with OC re appearance and unopposed motion; follow up re same | 0.30 | $325.00 | $97.50 |
| 4/10/2018 | IL | printed copy of mtn to reassign for frg | 0.10 | $125.00 | $12.50 |
| 4/10/2018 | IL | conf w. FRG re docket | 0.20 | $125.00 | $25.00 |
| 4/10/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 4/11/2018 | DSK | | 0.70 | $230.00 | $161.00 |
| 4/11/2018 | FRG | court: appeared on motion to reassign case to Judge Cox; court appearance status report | 1.00 | $500.00 | $500.00 |
| 4/11/2018 | IMJ | Observed status hearing | 0.40 | $230.00 | $92.00 |
| 4/12/2018 | IL | logged CASR ot 4/11/18 | 0.10 | $125.00 | $12.50 |
| 4/18/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 5/21/2018 | CPM | Email exchange w client re status of settlement | 0.30 | $325.00 | $97.50 |
| 6/14/2018 | IL | logged MINUTE entry | 0.10 | $125.00 | $12.50 |
| 6/20/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 7/06/2018 | CPM | Conf OC re settlement terms and scheduling prelim app; follow up email | 0.40 | $325.00 | $130.00 |
| 7/06/2018 | CPM | Conf DAE re OC call; follow up email to OC re same | 0.40 | $325.00 | $130.00 |
| 8/02/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |

| | | | | | |
|---|---|---|---|---|---|
| 8/22/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 9/13/2018 | CPM | Status | 1.00 | $325.00 | $325.00 |
| 9/19/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 10/02/2018 | RW | called client | 0.10 | $125.00 | $12.50 |
| 10/03/2018 | RW | mailing SA to client | 0.20 | $125.00 | $25.00 |
| 10/03/2018 | RW | read email, spoke to CPM, emailed client | 0.20 | $125.00 | $25.00 |
| 10/05/2018 | EY | dkt minute order 10/4 | 0.10 | $125.00 | $12.50 |
| 10/11/2018 | RW | logging and filing | 0.10 | $125.00 | $12.50 |
| 10/25/2018 | PMW | Return client call; email CPM about same | 0.20 | $230.00 | $46.00 |
| 12/17/2018 | RH | Logging and Filing | 0.10 | $125.00 | $12.50 |
| 1/22/2019 | RW | saving docs | 0.10 | $125.00 | $12.50 |
| 2/07/2019 | PMW | Review voicemail from client; respond to client | 0.30 | $230.00 | $69.00 |
| | | | | Total Fees | $20,580.50 |

***Expenses***

| Start Date | Description | Charges |
|---|---|---|
| 1/09/2017 | Postage | $0.92 |
| 1/09/2017 | Postage | $1.40 |
| 8/09/2017 | Copy | $0.30 |
| 8/09/2017 | Print | $0.15 |
| 8/09/2017 | Print | $0.15 |
| 8/09/2017 | Print | $0.30 |
| 8/09/2017 | Postage | $0.92 |
| 8/11/2017 | Print | $1.20 |

| | | |
|---|---|---|
| 8/11/2017 | Print | $1.20 |
| 8/11/2017 | Print | $0.30 |
| 8/11/2017 | Print | $0.30 |
| 8/14/2017 | Print | $0.15 |
| 8/14/2017 | Print | $0.75 |
| 8/14/2017 | Print | $1.80 |
| 8/14/2017 | Print | $1.80 |
| 8/14/2017 | Print | $0.60 |
| 8/17/2017 | Print | $0.30 |
| 8/17/2017 | Print | $1.20 |
| 8/17/2017 | Postage | $1.40 |
| 8/18/2017 | Print | $1.20 |
| 8/24/2017 | Print | $0.60 |
| 8/24/2017 | Print | $0.60 |
| 8/24/2017 | Print | $0.15 |
| 8/24/2017 | Print | $0.15 |
| 8/24/2017 | Print | $0.90 |
| 8/24/2017 | Print | $0.60 |
| 8/24/2017 | Print | $0.45 |
| 8/24/2017 | Print | $0.60 |
| 8/24/2017 | Print | $8.40 |
| 8/24/2017 | Print | $1.50 |
| 8/24/2017 | Print | $1.65 |

| | | |
|---|---|---|
| 8/24/2017 | Print | $1.65 |
| 8/24/2017 | Print | $0.60 |
| 8/24/2017 | Print | $0.90 |
| 8/24/2017 | Print | $0.60 |
| 8/24/2017 | Print | $8.40 |
| 8/24/2017 | Print | $1.50 |
| 8/24/2017 | Print | $0.15 |
| 8/24/2017 | Print | $0.15 |
| 8/24/2017 | Print | $0.15 |
| 8/24/2017 | Print | $0.15 |
| 8/24/2017 | Print | $0.15 |
| 8/24/2017 | Print | $0.15 |
| 8/24/2017 | Print | $0.30 |
| 8/24/2017 | Print | $3.30 |
| 8/24/2017 | Print | $0.15 |
| 8/24/2017 | Print | $0.30 |
| 8/24/2017 | Print | $0.45 |
| 8/24/2017 | Print | $0.30 |
| 8/24/2017 | Print | $4.20 |
| 8/24/2017 | Print | $0.15 |
| 8/24/2017 | Print | $0.15 |
| 8/24/2017 | Print | $0.15 |
| 8/24/2017 | Print | $0.15 |
| 8/24/2017 | Print | $0.15 |

| | | |
|---|---|---|
| 8/24/2017 | Print | $0.30 |
| 8/24/2017 | Print | $1.65 |
| 8/24/2017 | Postage | $6.16 |
| 8/25/2017 | Filing Fee-DAE VISA | $400.00 |
| 8/25/2017 | Process server fee-CK#1194 | $60.00 |
| 8/25/2017 | Process server fee-CK#1195 | $67.00 |
| 8/28/2017 | Copy | $0.30 |
| 8/29/2017 | Print | $0.15 |
| 8/29/2017 | Print | $0.15 |
| 8/29/2017 | Print | $0.15 |
| 8/29/2017 | Print | $5.40 |
| 8/29/2017 | Postage | $2.80 |
| 8/31/2017 | Print | $1.20 |
| 8/31/2017 | Print | $0.15 |
| 9/18/2017 | Print | $0.15 |
| 9/18/2017 | Print | $0.30 |
| 9/18/2017 | Print | $0.30 |
| 9/18/2017 | Print | $0.15 |
| 9/19/2017 | Phone chargeCK#1243 | $0.02 |
| 9/22/2017 | Print | $0.15 |
| 9/22/2017 | Print | $1.80 |
| 10/19/2017 | Print | $0.60 |
| 10/19/2017 | Print | $7.05 |

| | | |
|---|---|---|
| 10/19/2017 | Print | $0.30 |
| 10/19/2017 | Print | $4.35 |
| 10/19/2017 | Print | $0.90 |
| 10/19/2017 | Print | $0.15 |
| 10/19/2017 | Print | $0.15 |
| 10/19/2017 | Print | $0.60 |
| 10/19/2017 | Print | $2.40 |
| 10/19/2017 | Print | $0.60 |
| 10/20/2017 | Postage | $0.46 |
| 10/20/2017 | Legal research costCK#1317 | $7.30 |
| 10/23/2017 | Print | $0.15 |
| 10/23/2017 | Print | $0.15 |
| 10/23/2017 | Print | $0.15 |
| 10/23/2017 | Print | $0.45 |
| 10/25/2017 | Print | $0.15 |
| 11/01/2017 | Print | $0.30 |
| 11/01/2017 | Print | $2.40 |
| 11/29/2017 | Print | $0.60 |
| 11/29/2017 | Print | $0.15 |
| 11/29/2017 | Print | $0.15 |
| 11/29/2017 | Postage | $0.46 |
| 11/29/2017 | Postage | $1.19 |
| 11/30/2017 | Print | $1.95 |

| | | |
|---|---|---|
| 12/01/2017 | Print | $0.15 |
| 12/01/2017 | Print | $0.15 |
| 12/01/2017 | Print | $0.15 |
| 12/01/2017 | Print | $0.15 |
| 12/01/2017 | Print | $29.40 |
| 12/01/2017 | Print | $14.70 |
| 12/01/2017 | Postage | $13.30 |
| 12/11/2017 | Print | $23.85 |
| 12/11/2017 | Print | $0.15 |
| 12/13/2017 | Print | $0.60 |
| 12/13/2017 | Print | $0.45 |
| 12/13/2017 | Print | $0.45 |
| 12/13/2017 | Print | $0.45 |
| 12/13/2017 | Print | $0.45 |
| 12/13/2017 | Print | $0.45 |
| 12/14/2017 | Postage | $0.92 |
| 12/14/2017 | Print | $1.35 |
| 12/14/2017 | Print | $0.30 |
| 12/14/2017 | Print | $0.30 |
| 12/14/2017 | Print | $0.30 |
| 12/14/2017 | Print | $0.45 |
| 12/14/2017 | Print | $0.45 |
| 12/20/2017 | Print | $0.15 |
| 12/20/2017 | Print | $1.05 |

| | | |
|---|---|---|
| 12/20/2017 | Postage | $1.19 |
| 1/10/2018 | Print | $2.55 |
| 1/10/2018 | Print | $2.10 |
| 1/10/2018 | Print | $2.10 |
| 1/10/2018 | Print | $0.15 |
| 1/10/2018 | Print | $0.15 |
| 1/10/2018 | Print | $0.15 |
| 1/10/2018 | Print | $0.15 |
| 1/10/2018 | Copy | $0.15 |
| 1/10/2018 | Print | $0.60 |
| 1/10/2018 | Print | $4.20 |
| 1/10/2018 | Print | $0.15 |
| 1/10/2018 | Print | $0.15 |
| 1/16/2018 | Print | $3.45 |
| 1/16/2018 | Print | $0.60 |
| 1/16/2018 | Print | $0.60 |
| 1/16/2018 | Print | $3.45 |
| 1/17/2018 | Print | $0.90 |
| 1/17/2018 | Print | $3.75 |
| 1/17/2018 | Print | $0.60 |
| 1/17/2018 | Print | $3.75 |
| 1/17/2018 | Print | $0.90 |
| 1/17/2018 | Print | $0.60 |

| | | |
|---|---|---|
| 1/17/2018 | Print | $1.65 |
| 1/22/2018 | AM Travel/ windy city limo-DAE VISA | $131.25 |
| 1/22/2018 | PM Travel/windy city limo- DAE VISA | $131.25 |
| 1/23/2018 | Legal research costCK#1460 | $1.20 |
| 1/26/2018 | Travel/food CK#1520 | $34.45 |
| 1/26/2018 | Travel CK#1520 | $11.50 |
| 1/30/2018 | Print | $6.15 |
| 1/30/2018 | Print | $0.15 |
| 1/30/2018 | Print | $0.45 |
| 1/30/2018 | Print | $7.05 |
| 1/30/2018 | Postage | $0.47 |
| 1/30/2018 | Postage | $2.68 |
| 2/22/2018 | Print | $1.50 |
| 2/22/2018 | Print | $0.30 |
| 2/26/2018 | Travel/Limo CK#1573 | $131.25 |
| 2/26/2018 | Travel/Limo CK#1573 | $131.25 |
| 2/26/2018 | Travel CK#1573 | $11.50 |
| 3/20/2018 | Print | $0.15 |
| 3/20/2018 | Print | $0.15 |
| 3/20/2018 | Print | $0.60 |
| 3/20/2018 | Print | $0.60 |
| 3/28/2018 | Print | $0.30 |
| 3/28/2018 | Print | $0.15 |

| | | |
|---|---|---|
| 3/28/2018 | Print | $0.90 |
| 3/28/2018 | Print | $9.90 |
| 3/28/2018 | Print | $0.15 |
| 3/28/2018 | Print | $0.15 |
| 3/28/2018 | Postage | $0.94 |
| 3/29/2018 | Print | $0.30 |
| 4/06/2018 | Print | $0.15 |
| 4/06/2018 | Court Reporter-CK#1671 | $588.65 |
| 4/06/2018 | Postage | $0.47 |
| 4/10/2018 | Print | $4.95 |
| 4/11/2018 | Print | $0.15 |
| 4/18/2018 | Legal research cost CK#1700 | $2.30 |
| 8/02/2018 | Legal research cost | $0.50 |
| 10/03/2018 | Print | $0.15 |
| 10/03/2018 | Print | $0.45 |
| | Total Expenses | $1,976.25 |

Total New Charges $22,556.75

***Staff Summary***

| Name | Position | Hours | Rate | Fees |
|---|---|---|---|---|
| Corey J Varma | Associate | 32.00 | $230.00 | $7,360.00 |
| Cassandra P Miller | Partner | 19.40 | $325.00 | $6,305.00 |
| David Kim | Associate | 0.70 | $230.00 | $161.00 |
| Cortney McInerney | Paralegal | 0.10 | $125.00 | $12.50 |
| Francis R. Greene | Partner | 1.00 | $500.00 | $500.00 |
| Itzi Llamas | | 0.50 | $125.00 | $62.50 |
| Isabella Janusz | Associate | 0.40 | $230.00 | $92.00 |
| Jenna Studtmann | Paralegal | 0.40 | $125.00 | $50.00 |
| James O. Latturner | Partner | 4.30 | $700.00 | $3,010.00 |

| | | | | |
|---|---|---|---|---|
| Lisa Stroud | Paralegal | 0.30 | $125.00 | $37.50 |
| Paul M Waldera | Associate | 0.50 | $230.00 | $115.00 |
| Rachael Hess | | 0.10 | $125.00 | $12.50 |
| Rufus Coates Welsh | Paralegal | 22.80 | $125.00 | $2,850.00 |
| Tessa Chiu | Paralegal | 0.10 | $125.00 | $12.50 |
| | Tot Hrs: | 82.60 | | |

Please remit payments by check or money order to:
20 S. Clark Street, Suite 1500
Chicago, IL 60603

For security reasons, we do not retain credit card numbers for automatic charges. Please call 312-739-4200 to make credit card or debit card payments.